# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01028-SCT

*ANITA MINOR McLEMORE*

*v.*

*CARL D. McLEMORE*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/18/1998 |
| TRIAL JUDGE: | HON. THOMAS L. ZEBERT |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | KRISTIE SMITH-MILLER |
| ATTORNEY FOR APPELLEE: | GLEN K. TILL, JR. |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED AS MODIFIED- 06/29/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/20/2000 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Carl D. McLemore filed divorce proceedings against his wife, Anita Minor McLemore alleging cruel and inhuman treatment, habitual drug use, and irreconcilable differences. The chancellor granted the divorce on the grounds of irreconcilable differences and granted joint legal custody, with Anita named as custodial parent, of their fraternal twins who were then two and one-half years old. The chancellor's order, *inter alia*, required Anita to submit to random drug testing, and stated that "[b]oth parties shall assume the responsibility for the attendance of the children in church each Sunday while in their respective custody[.]" Incorrectly understanding the chancellor's order to require her to attend church in addition to being responsible for her children's attendance, Anita appealed to this Court alleging various constitutional violations. She also assigned as error the court's ordering drug tests, denying attorney fees, inequitable division of marital debts and medical bills, granting of extensive, unrestricted visitation, accepting the reports of the guardian ad litem and Court Appointed Special Advocate (CASA), not directing notification when the children became ill, and not addressing Carl's alleged hepatitis C affliction. Aggrieved by the chancery court's judgment, Anita appealed to this Court. With modification as to the church attendance requirement, we affirm the chancellor's judgment.

## STATEMENT OF THE FACTS

¶2. Carl and Anita were married on October 19, 1995, and became the parents of fraternal twins the following month. During the short volatile marriage, each party left the marital home several times following

arguments and alleged violence. Each alleged the other abused drugs. Only Carl had completed a drug rehabilitation program. Carl moved from the marital home, filed for divorce, requested custody of the twins, and sought to enjoin Anita permanently from harassing him.

¶3. On the court's own motion, a Guardian Ad Litem and Court Appointed Special Advocate (CASA) were appointed for the minor children. By Agreed Temporary Order, the court awarded temporary custody and control of the children to Anita's mother, Mrs. Minor, and Carl was ordered to pay $208.00 per month in child support.

¶4. In rapid succession, a number of motions were filed and hearings held, varying from an emergency TRO to orders for psychiatric exams, random drug testing, and two modifications of visitation. Interrogatories were propounded by both parties. Anita's father died unexpectedly. Seven months, four attorneys, and several battles later, the trial court entered its Final Judgment of Divorce.

## STANDARD OF REVIEW

¶5. The findings of fact of the chancery court, particularly in the areas of divorce and child support, will generally not be overturned by this Court on appeal unless they are manifestly wrong. *Nichols v. Tedder*, 547 So. 2d 766, 781 (Miss. 1989). Findings of the chancellor will not be disturbed or set aside on appeal unless the decision of the trial court is manifestly wrong and not supported by substantial credible evidence, or unless an erroneous legal standard was applied. *Carrow v. Carrow,* 741 So. 2d 200, 202 (Miss. 1999). For questions of law, our standard of review is de novo. *Harrison County v. City of Gulfport,* 557 So. 2d 780, 784 (Miss. 1990).

## DISCUSSION OF THE LAW

### I. THE COURT COMMITTED MANIFEST ERROR IN ORDERING THE DEFENDANT TO ATTEND CHURCH AND TO BE RESPONSIBLE FOR THE CHILDREN'S ATTENDANCE AT CHURCH.

¶6. Anita misinterprets the court's order. She was not ordered to attend church. The court's order pertained only to the children, stating that "[b]oth parties shall assume responsibility for the *attendance of the children* in church each Sunday while in their respective custody." (emphasis added). Anita asserts that this court order violates the First Amendment establishment and free exercise clauses of the U.S. Constitution as well as the Fourteenth Amendment, arguing that the court order constitutes government establishment of the Christian religion. She alleges that the word "church" used in conjunction with a specific day, Sunday, implicates a particular religion, Christianity. THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (1981) defines "church" as "place of worship, a congregation". It is not a foregone conclusion that such could only refer to a particular religion, sect, or denomination. The chancellor did not specify a particular faith. There was no discrimination or preference shown. The chancellor's order that the *children* attend *church* inherently provided for choice. One need only glance through the yellow pages for the vicinity in which Anita and Carl live to appreciate the diverse meaning of the word "church". This is simply a succinct term employed by the chancellor to describe a benefit that he determined to be in the best interest of the children. The polestar consideration in child custody cases is the best interest and welfare of the child. *Albright v. Albright,* 437 So. 2d, 1003, 1005 (Miss. 1983).

¶7. Anita asserts that the court order violates her constitutional right not to practice organized religion. While

the order for the *children* to attend "church" might somehow inhibit her ability to be completely free from any effect that "church" might have on her, the order was reasonably based upon serving the best interests of the children. The chancellor, familiar with the churches in the community, was doubtless aware of the myriad of programs offered for enrichment of children's lives. The range is great. Churches are traditionally places of calm and concern. At virtually no expense to parents, churches offer children the opportunity for interaction with groups of other children as well as adults, in an environment conducive to character-building.

¶8. In **Hodge v. Hodge**, 186 So.2d 748, 750 (Miss. 1966), this Court addressed a provision almost identical to the one in the present case. There the chancellor awarded custody to the father with the provision that the mother take the children to church each Sunday. On suggestion of error, this Court restated its position:

> We feel that it is certainly to the best interests of these three children to receive regular and systematic spiritual training each week, but we do not approve the decree of the Chancellor in mandatorily requiring that all three of said children be carried to church at eleven o'clock on each Sunday. We treated this portion of the Decree as a suggestion only. We reiterate that both the mother and father should be vitally interested in seeing that their children get regular and systematic spiritual training. Whether it is by attending Sunday School each Sunday or Church or both is for the parents alone to decide.

*Hodge v. Hodge*, 188 So. 2d 240 (Miss. 1966).

¶9. The facts of the case justify the chancellor's concern for the well-being of children whose parents have both struggled with numerous personal difficulties including drug addiction and tendencies toward violence. The chancellor was well aware that children of such tender years are particularly vulnerable. The chancellor chose a reasonable and accessible support network to import stability into the lives of children whose environment holds the potential for producing a tumultuous existence.

¶10. To follow the precedent established in **Hodge**, we modify the provision regarding the McLemore twins' church attendance set forth in the Final Judgment of Divorce in the present case, to read as follows: Both the mother and father should be vitally interested in seeing that their children get regular and systematic spiritual training. Whether it be by attending Sunday School each Sunday or Church or both is for the parents alone to decide.

¶11. The trial court's judgment on this issue is affirmed as thus modified.

## II. THE LOWER COURT ERRED IN NOT GRANTING THE DEFENDANT ATTORNEY FEES AND COSTS.

¶12. It is the discretion of the chancellor to award attorney fees. **Varner v. Varner,** 666 So. 2d 493, 497 (Miss. 1995). This Court is reluctant to disturb a chancellor's discretionary determination whether to award attorney fees. **Geiger v. Geiger**, 530 So. 2d 185, 187 (Miss. 1988). The chancellor in the case sub judice had the opportunity to view the parties' and the witnesses' demeanor. Anita's mother gave undisputed testimony that Anita's deceased father had left her with enough money to take care of Anita and the children.

¶13. Anita did not offer any credible evidence as to her attorney fees and costs. Estimates can only be

considered when the attorney provides a clear explanation of the method used in approximating the hours consumed in a case. ***McKee v. McKee***, 418 So. 2d 764, 766 (Miss. 1982). This Court in ***Setser v. Piazza***, 644 So. 2d 1211, 1216 (Miss. 1994), reversed an award of attorney fees where no evidence was presented of the ***McKee*** factors. ***Id.***

¶14. Anita's own actions resulted in increased attorney's fees generated by several contempt motions, an emergency order, a writ of assistance, an order setting aside the sale of marital property, and even judicial relief sought by her own parents because of Anita's behavior. During the seven month's course of this case, Anita went through four attorneys, including one who coached her while she appeared pro se.

¶15. For all of the foregoing reasons, this is without merit, and the chancellor's decision is affirmed.

### III. THE CHANCELLOR ERRED IN NOT ADDRESSING THE ISSUE OF WHICH PARTY SHOULD BE RESPONSIBLE FOR THE JOINT BILLS OF THE PARTIES AFTER HEARING TESTIMONY ON THIS ISSUE.

¶16. The record is totally devoid of evidence of joint or marital debt. Neither of the parties' Uniform Chancery Court Rule 8.05 Financial Disclosure Statements include any mention of joint or marital debt. At the hearing on the merits, Anita herself conducted the examination of witnesses, pro se. During her cross examination of Carl, she asked "Have you spent any money paying marital bills since you left in July, Sir?" His answer was "No I have not. We had no marital bills." Anita later took the stand and testified in narrative form about her strengths as a mother, but did not mention any marital debts. Anita's mother testified that during the time prior to the couple's separation, Carl gave her part of his pay check every month for payment on the children's bills. Financial declarations introduced at trial could have been the subject of much cross examination and interpretation. Anita's failure to introduce any evidence of "joint debt" at trial precludes this Court from considering whether the chancellor should have made a division based on such. This Court held, in ***Ortega v. Lovell***, 725 So. 2d 199, 203 (Miss. 1998) that "[t]his Court will not set aside a chancellor's finding of fact on such a matter as custody unless the finding is manifestly wrong or is not supported by substantial credible evidence. " In the present case there was no evidence, credible or otherwise, regarding any joint marital bills. The chancellor did not err in denying division of joint bills since there was no evidence that such existed. This issue is without merit, and the decision of the chancellor is affirmed.

### IV. WHETHER THE COURT ERRED IN NOT EQUITABLY DIVIDING THE MEDICAL BILLS RELATED TO THE PAST, CURRENT AND FUTURE TREATMENT OF THE CHILDREN, INCLUDING PRESCRIPTION AND NON-PRESCRIPTION MEDICATIONS.

¶17. As discussed in Issue III, Carl gave money to Anita's mother for bills of the children. Carl continues to provide health insurance for the children. At trial, Anita provided no evidence of outstanding medical bills of the children, reasonable and necessary or otherwise. For these reasons, this assignment of error lacks merit. The decision of the chancellor is affirmed.

### V. THE COURT ERRED BY REQUIRING THE DEFENDANT TO SUBMIT TO ONE YEAR OF DRUG TESTING AT HER EXPENSE.

¶18. Anita testified that she and Carl "did drugs" together before their marriage, but she denied that she

continued drug use after the marriage. When asked what her drug of choice was, Anita answered "cocaine and crystal methamphetamines." The record is replete with allegations and testimony of Anita's sometimes irrational behavior throughout the course of this case. Early in the proceedings the chancellor granted an emergency TRO upon motion of the Guardian Ad Litem who filed the motion "due to the emotional instability of Anita" and due to the "likelihood that she will commit some damage to herself and the children". Anita herself, as pro se counsel at the final hearing, in a question to her mother, asked: "do any of my irrational outbursts here keep me from being a good mother?" There was also ample evidence in the record regarding Carl's drug use. During the course of the proceedings in this case, he was in a pretrial diversion program with the district attorney's office following his arrest for sale of cocaine and crystal meth. Carl had successfully completed a drug rehab program but Anita had never sought professional help, because she felt she did not need it.

¶19. The chancellor observed the demeanor and credibility of the parties and the witnesses first hand. We find that he did not abuse his discretion in ordering one drug screen test per month for twelve months, for both Anita and Carl. We affirm the rule that "the polestar consideration in child custody cases is the best interest and welfare of the child." *Albright*, 437 So. 2d at 1005. Where the chancellor considers the testimony and demeanor of the parties in determining that drug testing of a parent is necessary for the well-being and safety of the children, an order for such is reasonable. This order clearly passes muster under the "best interests of the child" test.

¶20. For the foregoing reasons, we find this issue is without merit.

### VI. THE COURT ERRED IN ACCEPTING THE REPORT OF THE GUARDIAN AD LITEM AND OF THE CASA REPRESENTATIVE REGARDING THE VISITATION OF THE MINOR CHILDREN.

¶21. The record reflects that the guardian ad litem and the CASA representative are competent, trained professionals. Each exhibited concern about the well-being of the children. They investigated this case, making their recommendations based on their determination of what would be in the best interest of the McLemore twins. No objection to their testimony or their reports was made at trial. Anita testified that she "believe[d] the report [of the guardian ad litem] was wrong" although she admitted "I have not really read over it." Further, after admitting that she had not even seen the CASA report, she stated that if it says she shouldn't have custody of the children, that it would be wrong. The court did not err in accepting the reports of the guardian ad litem and the CASA representative. This issue is without merit.

### VII. THE COURT ERRED BY NOT ADDRESSING THE VISITATION ISSUE SURROUNDING THE NEEDED PRECAUTIONS DUE TO THE PLAINTIFF'S HEPATITIS C ILLNESS.

¶22. No evidence was presented at trial that Carl is infected with Hepatitis C. To the contrary, Carl provided the court with a sworn interrogatory response that he tested negative for Hepatitis C. Carl avers that this allegation is a false, malicious and slanderous statement on the part of Anita. The chancellor's ruling was not erroneous and is affirmed.

### VIII. THE LOWER COURT ERRED IN GRANTING THE PLAINTIFF EXTENSIVE SUMMER VISITATION AFTER THE TESTIMONY PRESENTED AT TRIAL.

¶23. The chancellor was faced with a difficult decision regarding custody as well as visitation. Neither Anita nor Carl would qualify for a parent of the year award, but they were fortunate to have their parents who had been willing and able not only to assume the responsibility of temporary custody of twin infants, but also to provide continuing support and stability to their children and grandchildren. Carl was living with his parents, and Anita spent most of her time at her mother's home, although the final judgment did not include any restrictions requiring the presence of the grandparents. At the time of the final judgment, Carl had been free of drug use for four years and was no longer on probation. There was credible testimony that he was a good father and worker, and he had straightened out his life. He and the children enjoyed their times together. During trial proceedings, Carl conducted himself in a proper manner at all times. Anita, on the other hand, was reprimanded on several occasions by the court, in one instance, for throwing her wedding ring across the table to Carl and abruptly leaving the courtroom.

¶24. Because the chancellor was able to view and examine the credibility and demeanor of the parties and witnesses, his determination of this issue was not manifestly wrong nor clearly erroneous. This assignment of error is without merit.

> **IX. THE COURT ERRED IN NOT GRANTING IN THE FINAL JUDGMENT THE REQUEST THAT ANITA MCLEMORE OR HER MOTHER BE NOTIFIED WHEN THE MINOR CHILDREN BECOME ILL OR ARE IN NEED OF MEDICAL TREATMENT**.

¶25. Anita presented no credible evidence that Carl had failed to properly care for the children when they became ill or experienced the bumps, bruises, scratches or scrapes that accompany childhood. To the contrary, there was evidence that Carl did notify Anita when the children were sick or hurt. There was no indication that Carl would fail to obtain necessary medical attention which the children may require, nor that he would fail to notify Anita of such when reasonably necessary to do so. This issue is without merit.

## CONCLUSION

¶26. With the modification of Issue I, the final judgment of the chancery court is affirmed.

¶27. **AFFIRMED AS MODIFIED.**

> **PRATHER, C.J., SMITH, WALLER AND DIAZ, JJ., CONCUR. McRAE, J., CONCURS IN PART. PITTMAN, P.J., CONCURS IN RESULT ONLY. BANKS, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY McRAE, J. MILLS, J., NOT PARTICIPATING.**

### BANKS, PRESIDING JUSTICE, DISSENTING:

¶28. Because I disagree with the majority's treatment of the church attendance aspect of the chancellor's decree, I respectfully dissent. In my view, the simplest and the required solution is to declare that portion of the decree unenforceable and a nullity.

> **McRAE, J., JOINS THIS OPINION.**