644 So.2d 1211 (1994)
Perry Nathan SETSER
v.
Beverly Marie PIAZZA.
No. 93-CA-00890.
Supreme Court of Mississippi.
October 27, 1994.
*1213 R. Louis Field, Way Field & Bodron, Vicksburg, for appellant.
Travis T. Vance, Jr., Vicksburg, for appellee.
Before PRATHER, P.J. and BANKS and McRAE, JJ.
PRATHER, Presiding Justice, for the Court:

I. STATEMENT OF THE CASE
The parties here were divorced in December, 1980. The mother, Beverly Piazza (Piazza) was granted custody of the two children, Pam and Thomas, and Perry Setser (Setser) was ordered to pay child support of $175.00 per week and certain medical obligations. The Chancery Court of Warren County reduced his obligation for child support to $450.00 monthly in July, 1992.
At the same time, the Chancery Court of Warren County heard Beverly Piazza's motion for citation for contempt and motion to modify the former decree granting the original divorce. The chancellor adjudged, inter alia, that Setser was in contempt for failure to pay child support and was in arrears in the amount of $12,500.00, plus 8% interest; that Pam Lyne Setser, Piazza and Setser's daughter, was emancipated and no longer dependent; that child support to be paid by Setser was modified to $450.00 per month for the parties' minor son; and that Setser pay $1,000.00 of Piazza's attorney fees and all court costs.
Setser paid the August 1992 child support payment of $550.00 to Piazza timely. On advice of his attorney, he then filed for bankruptcy to relieve him of debts other than his house, car, and child support payments. After taking bankruptcy, Hurricane Andrew hit the Florida coast where he lived and destroyed his home, car, house trailer used in his work and all personal effects.
In September, 1992, Setser sought an abatement of the modified child support "until such times as Petitioner has the means by which to comply with the order of the Court," stating as grounds that neither he nor his wife were gainfully employed and that Hurricane Andrew had destroyed all of his real and personal property. Piazza answered Setser's petition and included a counter-petition for citation for contempt. Piazza alleged Setser had violated the 1992 decree in that he was in arrears on the $100.00 monthly arrearage payment in the amount of $500.00, and in the amount of modified child support in the amount of $2,250.00. Piazza also alleged that Setser was gainfully employed and able to pay such child support.
On May 20, 1993, following a hearing, the chancellor entered an order which dismissed Setser's petition for abatement of child support, found Setser in civil contempt and in arrears in child support payments in the amount of $4,050.00. Piazza was awarded a judgment of $4,050.00 plus legal interest and her $1,000.00 attorney fees previously awarded in 1992, but later thought by Setser to be discharged in bankruptcy. Setser was also ordered to pay $350.00 for Piazza's attorney fees in the abatement and contempt matter.
Aggrieved with the chancery court's judgment, Setser appeals to this Court, seeking review of the following issues:
A. Whether the chancery court erred in dismissing Setser's motion for abatement of child support;
B. Whether the chancery court erred in holding Setser in contempt and in awarding Piazza attorney fees; and
C. Whether the chancery court erred in failing to terminate child support in its entirety because of the emancipation of the parties' minor son.

II. FACTS
Setser worked on nuclear power plants and supported refueling outages, traveling all over the United States. His hourly wage was between $25.00 and $35.00 an hour, but his expenses were high due to short term jobs, breaks between jobs, relocation, maintaining two households, and maintaining vehicles *1214 capable of taking him wherever his work might be. Still, Setser made between $60,000.00 and $70,000.00 per year. Setser had remarried after his divorce from Piazza, and he and his wife of twelve years, Linda Setser, had no children.
Following the 1992 modification and contempt hearing, Setser consulted an attorney who advised him to file for bankruptcy in order to relieve himself of other debts so he could make his child support payments and keep his home and car. Setser followed this advice, which action ruined his credit according to his testimony. In August, 1992, Hurricane Andrew destroyed everything Setser owned, including the truck he used to travel to his jobs and the camper trailer in which he lived in while working away from home. Although Setser had insurance on his home, the proceeds paid off the debt on his house and $3,000.00 or $4,000.00 more than the payoff amount of his home. Insurance proceeds paid Setser an additional $13,000.00 for five months rent in temporary housing which was paid directly to the housing authority. Insurance proceeds covered his debts on his personal automobile and trailer debt, and he received $6,000.00 insurance proceeds to make repairs to his business truck, which was already paid for. Setser used the $30,000.00 insurance proceeds for his personal property to rebuild his house. Setser personally did the repairs on his home because he could not afford to hire someone else to do it. A neighbor who is a certified electrician helped him with the electrical work. Setser also spent $2,000.00 on a fence to keep his dog from bothering the neighbors.
In early 1993, the Setsers were hit by another storm which ruined the south side of the new roof. Setser described his home as a condemned building, although he and his wife were living in it at the time of the hearing. After the storm, the Setsers furnishings were limited to a living room suite, kitchen table, a bed, a bathtub, and a stove and refrigerator, all of which were purchased with insurance proceeds. Setser was still working on his house at the time of the hearing and claimed he had spent close to the $53,000.00 in total insurance proceeds on it.
Since the storm, Setser had been unable to go back to work because he didn't have a reliable vehicle to get him to job sites. Also, Setser claimed he had lost his networking phone numbers which would have helped him look for a job, although he was checking the newspaper daily. Although he had received insurance proceeds to repair his truck, he had put that money into his house instead. Setser claimed there was no work for his skills in South Florida. Setser could ride a bus to a job site, but had not had any luck in finding any job in his field. He had worked in a FEMA contract position for four months for a tree company as a laborer, earning $7.24 an hour cleaning up storm damage and debris. During this period of employment Setser grossed a little more than $300.00 a week. Setser's wife was employed at the time of the hearing as a secretary, and had been for two weeks, although she had been out of work after the storm for two months.
Setser's personal effects at the time of the hearing were limited to a pair of boots, four pairs of blue jeans, and a pair of pants and a shirt. His and his wife's joint checking account contained $300.00. The only other item owned by the couple was Linda Setser's 1987 or '88 Pontiac Sunbird, for which she had paid between $2,800.00 and $3,000.00 after Hurricane Andrew from the couple's insurance proceeds for their personal belongings.
Setser had been trying to get work since his contract position expired. He planned to check into unemployment when he returned to Florida after the hearing on this matter. Setser estimated he might draw unemployment proceeds of $135.00 per week. His monthly expenses included: $95.00 electricity bill; $60.00 gasoline; $66.00 property taxes; $100.00 insurance; $25.00 telephone and $300.00 groceries. Setser also indulged his cigarette smoking and beer drinking habits of about $88.00 a month. Because of his bankruptcy petition, Setser had no debt other than the child support obligations and attorney fees. Linda Setser was earning a gross income of approximately $280.00 a week with a net of about $200.00 per week. Between Linda's income and Setser's income from January through April 1992, while he *1215 was employed as a laborer, the couple brought home $1,900.00 a month. Setser admitted he hadn't sent any of this income for his son's support because getting his house liveable was his "most important priority."
James Setser and Piazza's son, Thomas, who was twenty (20) years old at the time of the hearing and would be twenty-one in October 1993, had not contacted Setser for over a year prior to the hearing. Likewise, Setser had not tried to contact his son. Piazza had custody of the child since the parties' divorce in 1980. The boy was, at the time of the hearing, attending Hinds Community College and planning to attend Mississippi State upon graduation. College expenses had been paid by Piazza and her husband as well as through grants and loans. The child was a B student who also worked for United Parcel Service five nights a week for four hour shifts. Piazza thought her son earned $8.00 an hour.
Setser admitted he had not followed the July 1992 court order in that he failed to inform Piazza of his change in employment status and he failed to pay her $1,000.00 attorney fees. However, Setser believed that his bankruptcy had discharged the prior $1,000.00 attorney fee debt. Piazza had not been advised of Setser's bankruptcy.
Piazza earned, at the time of trial, $7.35 an hour. She testified she was unable to pay the attorney fees or court costs incurred in responding to Setser's motion for abatement and petition for contempt.
The chancellor found that Setser had made no attempt to comply with the prior decree regarding child support, although he could have at least partially complied. Setser's petition for abatement was dismissed because Setser came into court with unclean hands. The chancellor further found Setser in contempt of court and awarded Piazza judgment in the amount of $4,050.00 through May, 1993. Piazza was also awarded attorney fees in the amount of $350.00 and an additional $1,000.00 for her attorney fees previously incurred, but thought by Setser to have been discharged in bankruptcy.

III. THE LAW

A. Whether the chancery court erred in dismissing Setser's motion for abatement of child support.

The Parties' Contentions
Setser claims his motion for abatement of child support should have been granted because he presented the chancellor with evidence sufficient to prove a material change of circumstances on his part and that the support he was charged with providing exceeded his financial ability. While Setser admits child support generally vests when accrued, he claims that the egregious result in this case warrants an exception, making the modification effective as of the date filed, September 3, 1992.
Piazza contends that, since the chancellor properly found Setser had not attempted to comply with the court's prior decree regarding child support, he had unclean hands and his petition for abatement was correctly dismissed.

Relevant Law and Analysis
In the domestic arena, this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if an erroneous legal standard was applied. McEwen v. McEwen, 631 So.2d 821, 823 (Miss. 1994); Crow v. Crow, 622 So.2d 1226, 1228 (Miss. 1993). Modification of child support may be warranted only where there is a showing of an after-arising material change in circumstances regarding one or more of the interested parties, i.e., the father, mother, or child. Gregg v. Montgomery, 587 So.2d 928, 931 (Miss. 1991). The change in circumstances must be one that the parties could not have anticipated at the time of the original decree. McEwen, 631 So.2d at 823. This Court has said that once child support payments become vested they cannot be modified or forgiven by the court. Hammett v. Woods, 602 So.2d 825, 829 (Miss. 1992); Tanner v. Roland, 598 So.2d 783, 787 (Miss. 1992). Unlike alimony modification, child support reduction may not relate back to the date of the filing. Cumberland v. Cumberland, 564 So.2d 839, 847 n. 5 (Miss. 1990). If a modification is granted, the paying party is responsible for any support payments which *1216 vest during litigation of the motion for modification. Cumberland, 564 So.2d at 847-48; Thurman v. Thurman, 559 So.2d 1014, 1016-17 (Miss. 1990). A party may not petition for modification of a support decree unless he can show either that he has performed or that performance has been impossible. Taylor v. Taylor, 348 So.2d 1341, 1343 (Miss. 1977).
Setser presented evidence showing a material change of his financial circumstances which arose after entry of the decree ordering him to pay $450.00 a month to Piazza for their son's support and to pay the arrearage due of $100 per month. Setser came into court with clean hands in that at the time Setser petitioned for abatement he had performed the acts required by the decree of August 22, 1992, by paying the $550.00 payment which complied with that order. Setser presumed the $1,000.00 fee to have been discharged in bankruptcy. His proof supported his impossibility of performance. See Taylor, 348 So.2d at 1343. The chancellor was manifestly in error in failing to abate Setser's obligation for child support and in finding he had unclean hands.
A modification should have been granted, but it could not have been effective until the time the order of modification was entered, requiring Setser to pay all support payments which vested during the time it took to litigate his motion. Tanner, 598 So.2d at 786. This Court reverses and remands on the abatement to allow the chancellor to determine if all or a portion of the $550.00 child support should be decreased and for what duration of time. This will allow the chancellor to learn of Setser's financial situation since May, 1993 to date. This modification, however, may not relate back to the time Setser filed his petition, but only to May, 1993.

B. Whether the chancery court erred in holding Setser in contempt and in awarding Piazza attorney fees.

The Parties' Contentions
Setser argues that the chancellor erred in finding him in contempt because he did what was required of him  he promptly filed for modification while in compliance with the support order. Piazza claims that since Setser made no effort toward complying with the support order once he had filed for an abatement the chancellor properly found him in contempt.
Regarding the award of attorney fees, Setser contends that no award of attorney fees should have been made because he was not in contempt, because Piazza was more financially sound than was Setser, and because Piazza offered no evidence on which to base an award of attorney fees. Piazza answers that the chancellor properly found Setser in contempt; therefore, attorney fees were properly awarded.

Relevant Law and Analysis
Although a finding of contempt of court is left to the chancellor's substantial discretion, clear and convincing proof is required. Cumberland, 564 So.2d at 845. Where a party promptly files for a modification, i.e. reduction, of support based on his inability to pay, a finding of contempt is not proper. Cumberland, 564 So.2d at 847; Thurman, 559 So.2d at 1016-17.
The standard for an award of attorney fees on a motion for modification of support is basically the same as that applied in an original divorce action. Cumberland, 564 So.2d at 844. Attorney fees are not awarded in child support modification cases unless the party requesting fees is financially unable to pay them. Cumberland, 564 So.2d at 845. When the court denies a spouse's petition for contempt, no award of attorney fees is warranted. Cumberland, 564 So.2d at 845. This Court will not reverse the chancellor on an award of attorney fees unless manifest error is revealed by the record. Cumberland, 564 So.2d at 844.
As Setser promptly filed for a reduction in child support when his financial circumstances changed, the chancellor erred in finding him in contempt. Consequently, no attorney fees should have been awarded to Piazza. Regardless, Piazza failed to present any evidence concerning the McKee v. McKee, 418 So.2d 764, 767 (Miss. 1982), factors, which should also prevent an award of attorney fees. See also, Miss. Code Ann. *1217 § 9-1-41, as interpreted in Doe v. Doe, 644 So.2d 1199 (Miss. 1994). This Court reverses the chancellor both on his finding of contempt and the award of attorney fees.
As to the revival of the $1,000.00 attorney fee presumably discharged in bankruptcy, this Court abstains from addressing the question of the dischargeability of attorney fees. The record here is inadequate to address the issue. Reservation of the issue for another court is in order here.[1]

C. Whether the chancery court erred in failing to terminate child support in its entirety because of the emancipation of the parties' minor son.

The Parties' Contentions
Setser contends that the proof showed his minor son was actually emancipated because he was self-supporting, therefore Setser was no longer obligated to provide him support. Piazza responds that the parties' son was not emancipated and, moreover, the issue of his emancipation was not raised in the lower court pleadings nor were any findings regarding emancipation made by the chancellor.

Relevant Law and Analysis
The lower court is limited to those issues raised in the pleadings and to the proof in the record. Crow, 622 So.2d at 1230. Although not raised in the pleadings, issues may be tried by implied consent pursuant to M.R.C.P. 15(b). A finding that an issue was tried by implied consent depends upon whether the parties recognized that a new issue was being litigated at trial. Shipley v. Ferguson, 638 So.2d 1295 (Miss. 1994). Where the questions asked or the evidence presented at trial are relevant to the issues actually raised in the pleadings, trial by implied consent will not be found. Shipley, 638 So.2d at 1301.
Emancipation of a child has been defined by this Court as freeing the child "from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it." Caldwell v. Caldwell, 579 So.2d 543, 549 (Miss. 1991). A party is not responsible for the support of a child once the child is emancipated, either by reaching majority age or otherwise. Crow, 622 So.2d at 1230.
The question of the parties' minor son's emancipation was not raised in the pleadings, but there was some evidence relevant to this issue raised at trial. However, this evidence (sources of the child's support, information about his employment and salary, etc.) are also relevant to an issue actually raised by the pleadings, to wit: whether Setser's child support payments should be reduced. This would seem to be sufficient to prevent a finding that the issue of the child's emancipation was tried by implied consent. As additional support for this conclusion, the chancellor made no findings regarding emancipation of the child and the evidence does *1218 not support a finding that he was emancipated. See Duncan v. Duncan, 556 So.2d 346, 348 (Miss. 1990) (18 year old college student who worked only part time, had an acceptable scholastic record, and could not provide for her continuing education on her own was not emancipated). There is no error here.

IV. CONCLUSION
The chancellor erred in dismissing Setser's petition for abatement. Setser was in compliance with the court's previous decree at the time he filed for modification, preventing a finding of unclean hands. He successfully showed a material change in his financial circumstances which arose subsequent to entry of the previous decree. The petitioner did not seek a release from child support, but an abatement. This relief should have been granted to delay the payments until a more prosperous day. This Court reverses and remands for the chancellor to determine the appropriate amount of abatement of payment in current child support and the adjudged arrearage.
However, the modification can not relate back to the time of filing. Consequently, the chancellor's award of $4,050.00 for child support payments which accrued during litigation of Setser's motion is affirmed.
The chancellor erred in finding Setser in contempt and in awarding Piazza attorney fees. Setser promptly filed for a reduction in child support when his financial circumstances changed and while still in compliance with the previous decree. With no finding of contempt, attorney fees to Piazza are improper. Furthermore, Piazza failed to present evidence regarding any of the McKee factors. This Court reverses and renders.
As to a second award of $1,000.00 fee, the parties should ascertain whether the debt was discharged, and if so, the authority of the chancery court to reinstate the obligation after discharge in bankruptcy. This Court abstains from addressing this issue.
The chancellor did not err in failing to terminate child support because of the emancipation of the parties' minor son. First, the question of the child's emancipation was not raised in the pleadings and cannot be said to have been tried by consent. Moreover, the evidence does not show that the child is in fact emancipated. This Court affirms.
JUDGMENT IS AFFIRMED IN PART, REVERSED AND REMANDED IN PART.
HAWKINS, C.J., DAN M. LEE, P.J., and SULLIVAN, PITTMAN, BANKS, McRAE, JAMES L. ROBERTS, Jr. and SMITH, JJ., concur.
NOTES
[1] First, prior courts have held that attorney's fees are "so intertwined with the support obligation as to be in the nature of alimony or support." In re Meadows, 75 B.R. 695, 699 (Bkrtcy.N.D.Tex. 1987).

Second, the issue of bankruptcy courts' authority to relitigate state alimony and support obligations, as part of bankruptcy, is unsettled in Mississippi. Smith v. Smith, 114 B.R. 457, 461-63 (Bkrtcy.S.D.Miss. 1990) (holding state court-ordered obligations intended to be alimony or support are not dischargeable or reviewable for their reasonableness by subsequent bankruptcy proceedings). Contra Sullivan v. Sullivan, 62 B.R. 465, 471 (Bkrtcy.N.D.Miss. 1986) (holding discharge of state court-ordered child support payments possible where "manifestly unreasonable."). This issue is similarly unsettled at the national level. Forsdick v. Turgeon, 812 F.2d 801, 803 (2nd Cir.1987) (majority rule in bankruptcy is to refuse to modify matrimonial decrees of state courts). Contra In re Calhoun, 715 F.2d 1103, 1109 (6th Cir.1983) (allowing modifications of alimony and support, in bankruptcy, under changed circumstances).
It is, however, more settled that attorneys' fees, as a factor in balancing the parties' financial needs, are undischargeable in bankruptcy. See, e.g., In re Joseph, 16 F.3d 86, 88 (5th Cir.1994), citing Nunnally v. Nunnally, 506 F.2d 1024, 1027 (5th Cir.1975) (holding that if attorneys' fees are factored into state court's equitable distribution of estate, bankruptcy court cannot discharge it.).
Third, the facts in this case are similarly unsettled. This Court only has the recollections of an interested party as the witness as evidence on what the bankruptcy court ordered. The order of the bankruptcy court would be the best evidence of its judgment. As a result, this Court abstains from reaching a decision in this matter.