775 So.2d 1285 (2000)
W. Mac ELLIOTT, Appellant,
v.
Martha Janelle ROGERS, Appellee.
Nos. 98-CA-00753-COA, 1998-CA-01674.
Court of Appeals of Mississippi.
November 14, 2000.
Certiorari Denied, January 25, 2001.
*1286 Frank T. Moore Jr., Jackson, Attorney for Appellant.
Vaughn Davis Jr., Jackson, Attorney for Appellee.
En Banc.

MODIFIED OPINION

ON MOTION FOR REHEARING
SOUTHWICK, P.J., for the Court[1]:
¶ 1. In 1994, W. Mac Elliott and Martha Janelle Rogers were granted a divorce based on irreconcilable differences. A detailed property settlement agreement provided in part that Elliott would pay Rogers $4,000 per month for 120 months as alimony. In 1996, Elliott filed a motion to reduce or terminate the alimony. At the same time, Elliott, without court order, stopped his monthly alimony payments. Rogers filed a motion for citation of contempt. The chancellor denied the motion to modify and later found Elliott to be in contempt. We affirm.

*1287 FACTS
¶ 2. Elliott and Rogers were married on June 7, 1985, and lived together until the fall of 1994. They had no children. In early 1994 the parties decided to seek a divorce on the grounds of irreconcilable differences. They negotiated a property settlement agreement and filed a joint complaint for divorce. This divorce was granted and made final on November 4, 1994.
¶ 3. The property settlement agreement reflected a deliberate and thorough division of marital assets. Included was a provision for Elliott to pay Rogers alimony in the amount of $4,000 per month for 120 months. Rogers income for the immediately preceding year had been $93,000 while her husband had earned about $266,000.
¶ 4. There is evidence that Rogers stated in or before August 1994 during alimony discussions that her 1994 income would be about the same as in 1993. To the contrary, in the two years following the divorce, Rogers's adjusted gross income increased substantially to $183,359 in 1994 and to $313,650 in 1995. This change occurred mainly because of Rogers's promotion and election to a higher office on the board of directors at her family's bank. The record suggests that her income will continue to increase barring some unforeseen event. Elliott's adjusted gross income was $97,284 in 1994 and $285,304 in 1995.
¶ 5. On April 22, 1996, Elliott filed a motion to terminate or reduce the amount of the alimony payments to Rogers. He relied upon the substantial increase in income that his former wife was enjoying. Elliott also sought relief from certain other property agreement obligations. He has now abandoned those claims, and they are not before us. He also suspended all payments required of him under the property settlement agreement. In response, Rogers filed a motion for contempt seeking to have these payments reinstated and the original judgment enforced.
¶ 6. A hearing on the motion to modify the prior judgment was held over the course of three days in March 1997. The chancellor entered a ruling on the motion on February 12, 1998, in which he ruled that Elliott's motion should be denied because he found that there had not been a substantial change in circumstances to warrant a modification.
¶ 7. The hearing on the motion for contempt was held on October 16, 1998. The chancellor found Elliott to be in contempt for refusing to abide by the judgment of divorce. The chancellor awarded attorney's fees to Rogers in the amount of $5,911.25. Elliott appeals.

DISCUSSION

I. Evidence of change in circumstances sufficient to modify alimony
¶ 8. The chancellor found that the $4,000 per month that Elliott had agreed in 1994 to pay to Rogers for 120 months was periodic alimony. Ms. Rogers argued that it was lump sum alimony. Periodic alimony may be required in a divorce because of the husband's duty to support his wife in the manner to which she had become accustomed, to the extent of his ability to pay. Brennan v. Brennan, 638 So.2d 1320, 1324 (Miss.1994). The alimony is normally modifiable if there is a showing of a material and unanticipated change in the circumstances of the parties arising after the original decree was rendered. Anderson v. Anderson, 692 So.2d 65, 70 (Miss.1997).
¶ 9. The relevant part of the alimony provision of the property settlement agreement is this:
Husband shall pay to Wife, ... the sum of $4,000 per month, unless Wife shall die or remarry.... Said payments shall be deductible to Husband and taxable to Wife. In the event of Husband's death ... Husband's heirs and representatives shall be bound to make said payments until the earlier of Wife's *1288 death, remarriage or the expiration of said 120 month period.
Though the parties to a divorce are entitled to enter agreements regarding support, such agreements need to be approved by the court. See Miss.Code Ann. § 93-5-2(Rev.1994).
¶ 10. The Supreme Court has recognized three forms of alimony: 1) lump sum alimony, 2) rehabilitative periodic alimony, and 3) periodic alimony. "Lump sum alimony ... constitutes a fixed liability which is not subject to modification." McDonald v. McDonald, 683 So.2d 929, 931 (Miss.1996). "Rehabilitative alimony has been defined as modifiable, for a fixed period of time, and vesting as it accrues. While both rehabilitative periodic alimony and lump sum alimony which is not paid all at once can share the same characteristics of being a certain amount of money paid over a certain amount of time, they are distinguishable in their modifiability, respective purposes, and by the intent for which the chancellor grants them." Hubbard v. Hubbard, 656 So.2d 124, 129 (Miss.1995). "Periodic alimony is subject to modification and ceases upon the wife's remarriage or upon the husband's death." McDonald, 683 So.2d at 931.
¶ 11. This agreement was prepared by quite capable attorneys. There is difficulty in fitting this agreement within any of the accepted alimony categories. The parties agreed to a definite sum for a set number of months, payable by the former husband's estate if he were to die before the obligation is satisfied. That has attributes of lump sum alimony. Hubbard, 656 So.2d at 129. The chancellor concluded that it was not lump sum since no total amount was ever stated. That is a reasonable consideration, not because the calculation itself is difficult but because it appears that the parties were not thinking in terms of a fixed sum payable out over time, but were considering a periodic sum necessary for some purpose that would terminate after ten years. The chancellor also relied on the fact that the payments terminated at the recipient spouse's death, which is not a characteristic of lump sum alimony. Moreover, the payments are deductible by the payor and taxable to the recipient.
¶ 12. Another possible category is rehabilitative alimony. Hubbard, 656 So.2d at 130. An earlier recognized label for such payments was "periodic transitional alimony" that would allow a spouse whose immediate income was considered inadequate to develop over an expected period of time to where alimony could be terminated. Dufour v. Dufour, 631 So.2d 192, 195 (Miss.1994). There was little discussion of this in the trial court or in the briefs on appeal. We move to the final one.
¶ 13. Though the chancellor determined this to be periodic alimony, an initial and obvious problem with that label is that such alimony cannot have a fixed termination date. Hubbard, 656 So.2d at 129. Put another way, if this is the alimony that is justified because of the need for support, then the "parties cannot by contract deprive, and it is doubtful if any court has the authority to deprive itself of the future authority to modify ordinary periodic alimony, or make it continue beyond the remarriage of the wife or the death of the husband." East v. East, 493 So.2d 927, 931 (Miss.1986).
¶ 14. This Court is invited to participate in what might to some observers be considered little more than a tyrannical exercise in labeling. The effort arguably is necessary because the parties in reaching their consensual details of this alimony did not diligently follow established rules for a specific kind of alimony. This agreed monthly payment has attributes that are incongruous with any of the three court-recognized categories. This makes relevant whether labeling is even necessary when represented parties have entered an agreement as to alimony? Looking at the issue from a different point in time, should a chancellor refuse to approve an alimony agreement that cannot be fitted into one of the three recognized categories?
*1289 ¶ 15. We find our guidance from precedents in which the Supreme Court has not required consensual support agreements to follow the same terms as for court-imposed alimony. For example, living with a sexual partner after a divorce and without marriage is not by itself grounds to terminate periodic alimony. Hammonds v. Hammonds, 641 So.2d 1211, 1216 (Miss.1994); Hammonds v. Hammonds, 597 So.2d 653, 655 (Miss.1992). However, when a couple agreed in their divorce settlement that such cohabitation would without more automatically terminate the obligation of the husband to pay periodic alimony, this agreement was enforced. Weathersby v. Weathersby, 693 So.2d 1348, 1350 (Miss.1997). The court made this distinction: "In these cases [the two Hammonds decisions] there was no clause incorporated into the divorce decree whereby the ex-wife would forfeit her right to alimony by cohabiting with another man." Id. The Weathersby court determined that the parties had considerable freedom to impose various terms upon themselves:
In property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts.
Id. at 1351.
¶ 16. Weathersby is not alone in its stance that the parties can go further in their financial agreements at the time of divorce than a chancellor may impose by order. The Supreme Court disfavors an escalator clause for support payments if the increase is tied solely to the Consumer Price Index. Speed v. Speed, 757 So.2d 221, 225 (Miss.2000). However, relying upon Weathersby, the court held that the parties in their initial agreement as to alimony could require periodic adjustments to be made solely because of changes in the CPI. Id. at 225-26.
¶ 17. This approach does not void the more general principle that some terms in agreements incorporated into final divorce decrees are modifiable if proper grounds are shown. E.g., Gregg v. Montgomery, 587 So.2d 928 (Miss.1991). On one extreme, certain terms in an agreement have been held all but unenforceable. Examples previously mentioned are attempting to deprive a court of the "future authority to modify ordinary periodic alimony, or make it continue beyond the remarriage of the wife or the death of the husband." East, 493 So.2d at 931. Nearer the opposite extreme are terms such as we address here. When this alimony obligation agreement was created, each party had a substantial income. The former husband sought to modify or terminate the payments based on evidence that each party had an even more substantial income today.
¶ 18. Mr. Elliott contracted with his former spouse as part of an overall property agreement to make payments of this amount for ten years. Even though the various referenced alimony precedents require us to look beyond the language of the agreement, we note in precedents such as Weathersby another and equally strong equity. That is the desire to enforce the agreement of the parties reached at the time of the divorce. The problem with labels may well have arisen from the fact that able counsel were trying to accomplish a variety of tasks with this part of the agreement. For us to order the cessation of the payments based strictly on the absence of identifiable need may unravel the bargain that was struck.
¶ 19. The question becomes what circumstances would permit a change in this alimony even in the face of the parties' agreement. We do not answer that today, since whatever equities might allow a modification, none is shown here. We conclude that the payments in this case, agreed as *1290 to amount and duration and which do not neatly fit within any alimony category, are within the broad latitude that divorcing couples have to resolve their affairs. Weathersby, 693 So.2d at 1351. This is far removed from a situation in which equity must act.
¶ 20. Having decided that in this appeal it does not matter what label is affixed to these payments, we necessarily are not reaching whether the chancellor was correct in finding that this was periodic alimony. As the chancellor recognized, it was not traditional periodic alimony.
¶ 21. What this case suggests is that danger lurks in divorce agreements carefully tailored by counsel if they ignore the overarching rules that apply to the parties' efforts in the area of spousal support. We have concluded that whatever hazards there are to the stability of the original agreement were not encountered here. We continue to enforce the bargain.

II. Contempt for withholding alimony payments
¶ 22. The Supreme Court has stated that "contempt matters are committed to the substantial discretion of the trial court which, by institutional circumstance and both temporal and visual proximity, is infinitely more competent to decide the matter than we are." Morreale v. Morreale, 646 So.2d 1264, 1267 (Miss.1994).
¶ 23. Elliott unilaterally withheld the alimony payments following the filing of his original motion to modify. These payments were in arrears until Elliott finally paid them the morning of his contempt hearing, some thirty months later. Until modified, the payments remain his obligation, and it is contempt as a matter of law to fail to make them unless there is an inability to pay.
¶ 24. However, the Supreme Court has held that when a motion to modify is filed simultaneously with the stopping of payments, contempt may not be justified. Setser v. Piazza, 644 So.2d 1211, 1216 (Miss.1994). Nonetheless, Setser and its precedents arose when the plea for modification was based on an inability to pay. Having done all that he is able to do financially and legally, a paying spouse should not be held in contempt once inability to pay is shown. Here, there was never an allegation of inability to pay. Therefore the equities that limit a chancellor's discretion if a spouse cannot pay there cannot be wilful ignoring of a court's order if the payments cannot be madedo not apply here. We find no error in the conclusion that Mr. Elliott was in contempt.

III. Attorney's fees
¶ 25. A chancellor is justified in awarding attorney's fees that are incurred in pursuing a contempt motion. Elliott wilfully violated the court's judgment by withholding alimony. Rogers took necessary action to enforce that judgment. When a party is held in contempt for violating a valid judgment of the court, then attorney's fees should be awarded to the party that has been forced to seek the court's enforcement of its own judgment. Varner v. Varner, 666 So.2d 493, 498 (Miss.1995).
¶ 26. The chancellor examined the fee request at a hearing. He found that the amount was based solely on the legal work necessary to pursue the contempt motion and not on the separate issues regarding modification. Since Rogers clearly was able to pay her own attorney, the only grounds that the chancellor used to order the payment of fees was that Rogers had brought a successful contempt motion. That is a valid basis here.
¶ 27. The amount of attorney's fees in a divorce action is to be set by the chancellor within a considerable range of discretion. Smith v. Smith, 614 So.2d 394, 398 (Miss. 1993). We find no error in the manner that this discretion was exercised in this case.
¶ 28. THE JUDGMENT OF THE CHANCERY COURT OF HINDS *1291 COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE TO BE PAID ON THE $133,714.96 AWARDED BY THE TRIAL COURT. ALL COSTS ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.
MYERS, J., NOT PARTICIPATING.
NOTES
[1] On rehearing, the former opinion is withdrawn and this opinion is substituted. The motion for rehearing is denied.