ISHEE, J„
for the Court.
¶ 1. The Chancery Court of Harrison County held Appellant, William T. Chroni-ger (‘William”), in contempt of court for failure to pay sums required by a March 11, 2002 divorce judgment to Appellee, Dawn E. Chroniger (“Dawn”). Aggrieved by the judgment against him, William appeals. Finding error, we reverse and remand in part, and affirm in part.
FACTS
¶ 2. William and Dawn were divorced on March 11, 2002 on the statutory grounds of irreconcilable differences. Incident to the divorce, the parties signed a property settlement agreement on November 13, 2001 detailing the division of property and alimony payments, as well as governing the payment of child support and custody of their minor daughter. The agreement included a provision asking the court to reconsider custody of William and Dawn’s minor daughter once the child reached the age of consent, taking into account the child’s expressed preference as to with whom she wished to live. Also according to the agreement, William was to pay Dawn $450 per month for a fixed period of thirty-six months, as well as one half of his retirement payable from the date of his retirement from the United States Navy. Additionally, the agreement required William to pay Dawn $1,295 at a rate of no less than fifty dollars per month, representing child support arrearage and property division. The agreement also required Dawn to hold William harmless from indebtedness on the parties’ Ford Windstar van.
¶ 3. However, when William discovered that Dawn was cohabitating with another man, he ceased the monthly alimony payments based on the results of his internet research and consultation with a United States Navy Judge Advocate General (“JAG”) officer. William’s research and the JAG officer’s advice led William to believe that such cohabitation constituted grounds under Mississippi law for terminating the alimony payments to Dawn. Dawn filed a motion for contempt on March 6, 2003, asking that the chancellor order William to pay the arrearage on the ceased alimony payments. Further, as per the agreement, Dawn asked the chancellor to reconsider the custody of their minor daughter because she had reached the age of thirteen, and thus could express her preference as to the parent with whom she wished to live.
¶ 4. The minor child expressed a preference to live with William, and thus, the chancellor granted William permanent physical custody after determining that such custody would be in the best interests of the child. The chancellor further denied William’s request that Dawn be ordered to pay child support as a noncustodial parent, citing the agreement provision which stated that Dawn would not be required to pay child support. Additionally, the chancellor characterized the alimony payments as lump sum alimony and thus not subject to modification. As a result, the chancellor held William in contempt for failure to pay the alimony according to the divorce decree and ordered him to pay $3,995, representing $2,700 for the six months in which William, as of the time of trial, had failed to pay Dawn, and $1,295 child support arrearage and property payment.
¶ 5. Aggrieved of the judgments against him, William contends the following on appeal: (1) that the chancellor erred by granting relief to Dawn because Dawn had “unclean hands;” (2) that the chancellor erred by not finding the previously covered alimony, along with the military retirement, to be permanent periodic alimony; (3) that the chancellor erred by failing *314 to terminate the alimony payments based on Dawn’s cohabitation with another male; and (4) that the chancellor erred by failing to award child support.
STANDARD OF REVIEW
¶ 6. This Court “will not disturb the findings of a chancellor unless we find an abuse of discretion, an erroneous application of the law or a manifest error.” Brawdy v. Howell, 841 So.2d 1175, 1179 (¶ 8) (Miss.Ct.App.2003). “If we find substantial evidence in the record to support the chancellor’s findings, we will not reverse.” Id.
ISSUES AND ANALYSIS
I. Whether the chancellor erred by granting relief to Dawn because she had “unclean hands.”
¶ 7. William contends that the chancellor erred in granting relief to Dawn because Dawn entered the proceedings with “unclean hands” by failing to hold William harmless from indebtedness for the parties’ Ford Windstar van, as per the agreement. The agreement provides:
[Dawn] will keep the 1998 Ford Winds-tar currently in her possession and agrees to hold [William] harmless for same. [William] will provide to [Dawn] a statement releasing him from any responsibility to this vehicle, so that if it becomes difficult for her to maintain it, she can sell or trade said vehicle. [William] further agrees to provide to [Dawn] a Specific Power of Attorney so that she can obtain a vehicle in her name only, if necessary.
William contends that Dawn “pocketed” payments he sent her, causing the van to be repossessed, which resulted in a judgment against him damaging his credit.
¶ 8. The basic premise of the “clean hands” doctrine is that “no person as a complaining party can have the aid of a court of equity when his conduct with respect to the transaction in question has been characterized by willful inequity.” Richardson v. Cornes, 903 So.2d 51, 55 (¶ 15) (Miss.2005) (quoting O’Neill v. O’Neill, 551 So.2d 228, 233 (Miss.1989)).
¶ 9. Here there is no evidence in the record of willful misconduct on Dawn’s part. While it is undisputed that the van was repossessed, there is no evidence of a judgment against William concerning such repossession. Because we find no evidence of willful inequity on Dawn’s part, we affirm with respect to this argument.
II. Whether the chancellor erred by not finding the previously ordered alimony, along with the military retirement, to be permanent periodic alimony.
¶ 10. William next contends that the chancellor erroneously classified the thirty-six fixed alimony payments and payment of one half of William’s military retirement as lump sum alimony. To determine whether alimony is lump sum or periodic, we must examine the substance, without regard to labels. Creekmore v. Creekmore, 651 So.2d 513, 518 (Miss.1995).
¶ 11. “Lump sum” alimony is a fixed and irrevocable amount which may not be modified. West v. West, 891 So.2d 203, 212 (¶ 22) (Miss.2004). Two characteristics which help determine if alimony is “lump sum” are (1) fixed amount, or (2) fixed period of time. Creekmore, 651 So.2d at 518.
¶ 12. Periodic alimony, as a general rule, has no fixed termination date, but rather terminates automatically upon the death of the obligor or upon the obli-gee’s remarriage. West, 891 So.2d at 212 (¶ 21). Periodic alimony may be modified or even terminated upon the occurrence of *315 an unanticipated material change in circumstances. Id.; see also Elliott v. Rogers, 775 So.2d 1285, 1287 (¶ 8) (Miss.2000) (noting standard for modifying periodic alimony). “Unless it is clear from the record what sort of alimony award is given, we must construe the alimony as being periodic and not lump sum.” West, 891 So.2d at 212 (¶22). However, the proper course for one seeking alimony modification is to petition the court for modification, not wait until cited for contempt. Id. at 212 (¶ 21).
¶ 13. The thirty-six monthly payments, in fixed amount, agreed to in the property settlement agreement are clearly lump sum alimony and thus not subject to modification or termination. However, the payment of one-half of William’s military retirement has no fixed duration, nor, as of the time of the proceedings sub judice, a fixed amount. Nevertheless, military retirement benefits receive somewhat different treatment than other “alimony” awards. Illustrative of this distinction is the Mississippi Supreme Court’s decision in Davis v. Davis, 626 So.2d 111, 112 (Miss.1993).
¶ 14. In Davis, the chancellor’s final judgment stated that the wife would receive “periodic alimony” in “an amount equal to one-half of the monthly military retirement entitlement of the [husband] until such time as the [wife] shall remarry, die, or upon further order of the court.” Id. The wife challenged the chancellor’s restriction of the military benefits (i.e., termination of benefits upon death, remarriage, or further court order),- claiming that she was entitled to one-half without restriction. Id. The Davis court disagreed with her and stated:
The [chancellor] did not assign [the wife] one-half of her husband’s military retirement. If the [chancellor] had awarded [her] one-half of the entitlement as authorized by the Uniformed Services Former Spouses Protection Act, 10 U.S.C. § 1408, such award could, unless specifically defined, be construed as part of the parties’ property settlement, not subject to modification. The chancellor avoided this consequence’ and left an important open avenue for modification in the event conditions change necessitating reconsideration of the award.
Id. Here, however, the property settlement agreement did grant Dawn one-half of the military retirement, and the chancellor correctly stated in his final judgment that William’s payment to Dawn of such benefits was a “substitute for a property division” and thus characterized as lump sum alimony. Therefore, though the alimony may have a “superficial similarity to payments of periodic alimony,” it is nevertheless correctly characterized as lump sum and thus not subject to modification. See West, 891 So.2d at 212 (¶ 22); see also Cunningham v. Lanier, 589 So.2d 133, 136-37 (Miss.1991) (“It is fundamental that alimony which ‘substitutes’ as a division of property is lump sum rather than periodic alimony”). Consequently, the chancellor did not err in his characterization of the alimony as lump sum and we affirm as to this issue.
III. Whether the chancellor erred by failing to terminate alimony based upon Dawn’s cohabitation.
¶ 15. Because, for the reasons above, we hold that the chancellor did not. err in his characterization of the alimony payments as lump sum, such payments are not subject to modification even upon a showing of a material change in circumstances. See id. We therefore find no error in the chancellor’s decision with respect to this issue and affirm.
IV. Whether the chancellor erred by failing to award child support.
*316 ¶ 16. William next contends that the chancellor erred in failing to award him child support for the parties’ minor daughter. The agreement between the parties specified that Dawn would not have to pay child support. When denying William’s request that Dawn be made to pay child support, the chancellor simply cited the previous agreement, stating that “[a]s provided by the parties’ property settlement agreement incorporated into the judgment of divorce, [Dawn] is not required to pay child support to [William].”
¶ 17. Generally, the chancellor has wide discretion regarding modification of child support. Brawdy, 841 So.2d at 1178 (¶ 9). However, “[t]he welfare of children and their best interest is the primary objective of the law, and the courts must not accord to contractual arrangements such importance as to turn the inquiry away from that goal.” McManus v. Howard, 569 So.2d 1213, 1215-16 (Miss.1990). Further, “[Chancellors should be reluctant to enter orders that do not require a non-custodial parent to pay an appropriate amount of child support,” and such orders “should be entered only in rare circumstances.” Brawdy, 841 So.2d at 1179 (¶ 16). The chancellor must additionally include detailed findings when entering an order denying child support from a noncustodial parent. See id.; cf. White v. White, 722 So.2d 731, 737 (¶41) (Miss.1997) (“This Court has consistently required chancellors to justify any departure from the statutory guidelines when setting child support awards in a detailed, written findings of fact and conclusions of law”). A substantial or material change in circumstances “not reasonably anticipated at the time of the previous agreement” may warrant modification of a child support award. Id. at 1178-79 (¶ 11).
¶ 18. Here, the chancellor gave no explanation for denying William’s request for child support from Dawn other than simply citing the previous property settlement agreement. The chancellor made no apparent determinations as to the best interests of the child or the possibility of a material change in circumstances due to, for example, the award of permanent physical custody to William. We therefore reverse the chancellor’s decision on this issue and remand for a more detailed explanation for the denial of child support, including a determination of whether such denial is in the best interests of the child and whether an unanticipated, substantial and material change in circumstances has occurred so as to warrant modification of the original decree.
¶ 19. THE JUDGMENT OF THE HARRISON COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, IRVING, CHANDLER, GRIFFIS AND BARNES, JJ., CONCUR.