# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-01758-COA

**BRIAN KORELITZ**                                                      **APPELLANT**

**v.**

**RUTH'E KORELITZ**                                                     **APPELLEE**

DATE OF JUDGMENT:              11/06/2015
TRIAL JUDGE:                   HON. ROBERT GEORGE CLARK III
COURT FROM WHICH APPEALED:     MADISON COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       ROBERT MARVIN PEEBLES
                               MATTHEW STANLEY EASTERLING
                               MARTY CRAIG ROBERTSON
ATTORNEY FOR APPELLEE:         AMY D. JORDAN
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       DENIED MODIFICATION OF FINAL
                               JUDGMENT FOR DIVORCE
DISPOSITION:                   AFFIRMED - 05/09/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND GREENLEE, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In March 2006, Brian Korelitz and Ruth'e Korelitz were granted a divorce by the Madison County Chancery Court. As part of the divorce, Brian and Ruth'e entered into a written property-settlement agreement. The alimony provision of the agreement originally contained the word "periodic" six times. But after negotiations between the parties, each instance of "periodic" was stricken through and initialed by both parties. Additionally, there was a handwritten clause stating that the alimony provision of the agreement was nonmodifiable. This was also initialed by both parties.

¶2. In August 2014, alleging a de facto marriage of Ruth'e, Brian initiated an action to terminate his alimony obligation. Alternatively, Brian asked the court to modify his alimony on the ground that he had experienced a substantial decrease in his income. The chancellor found that the alimony provision was to be classified as lump-sum alimony—and thus not subject to modification. Brian appeals. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶3. In 2006, Brian and Ruth'e agreed to an irreconcilable-differences divorce. Their agreement relating to child custody, child support, and property settlement was reflected in a document that was executed on March 2, 2006.

¶4. The alimony provision of the agreement, which is at issue in this case, reads as follows:

> A. ~~Periodic~~ Alimony. [Brian] agrees to pay unto [Ruth'e] as ~~periodic~~ alimony the monthly sum of $2,850.00 per month, beginning the first day of the month immediately following execution of this Agreement for a period of thirty-six (36) months, reducing to $2,600.00 for a period of thirty-six (36) months, [and] reducing to $2,100.00 for a period of thirty-six (36) months. ~~Periodic~~ [A]limony shall then reduce to $1,750.00 until September 1, 2019, or [Brian's] retirement, whichever occurs later, whereupon ~~periodic~~ alimony shall cease. Said ~~periodic~~ alimony shall be payable one-half on the 1st and one-half on the 15th of each month. In addition, such ~~periodic~~ alimony shall cease upon the remarriage of [Ruth'e] or upon the death of either party[,] whichever occurs first. The payments shall be deductible by [Brian] and includable as income by [Ruth'e], both for state and federal income tax purposes. [Handwritten addition as follows:] *Said payments are further non-modifiable, except as set forth herein above*.

¶5. The word "periodic" was initially inserted into the alimony paragraph six times. But, in the course of negotiations by the parties, the word was later stricken through and initialed by the parties, in every place the word appeared. Also, there was a handwritten statement at

2

the end of the alimony provision that stated: "Said payments are further non-modifiable, except as set forth hereinabove." This change was also initialed by both parties.

¶6.    Additionally, according to the terms of the agreement, Brian agreed to assure alimony payments by maintaining certain insurance policies as follows:

   A.    [Brian] agrees to maintain in full force and effect a policy or policies of insurance on his life that will provide at least $400,000.00 in death benefits for the benefit of [Ruth'e] as long as he is required to pay alimony

    . . . .

   D.    In addition, in order to assure the payment of . . . alimony, [Brian] shall maintain in full force and effect disability insurance coverage providing benefits of not less than $4,200.00 per month as long as . . . [Brian] is obligated to pay alimony to [Ruth'e] . . . .

¶7.    Following the divorce, Ruth'e and Lee, the parties' son, moved to California. While there, Ruth'e met, and began a romantic relationship with, Michael Rideout. Ruth'e and Michael cohabited in her California apartment from September 2007 to mid-February 2008.

¶8.    In February 2008, Ruth'e and Michael left California and moved to Hot Springs, Arkansas. They lived in separate residences, but continued their sexual relationship. Ruth'e and Michael maintained separate bank accounts, and Ruth'e was solely responsible for her home repairs, lawn, monthly utility bills, and mortgage.

¶9.    On August 29, 2014, Brian filed a complaint for termination of his alimony obligation under the agreement. Brian sought the termination on the basis that Ruth'e and Michael cohabited and entered into a de facto marriage. Alternatively, he asked the court to modify his alimony payments on the ground that since the entry of the final judgment of divorce, he

had experienced a substantial decrease in his income.

¶10. At the time of the judgment of divorce, Brian's income was approximately $230,000. However, Brian later saw a reduction of his salary, and eventually lost his job, due to his employer's budgetary problems and corporate restructuring. After his position was eliminated, his employer provided severance pay in the sum of $190,000. And although Brian was able to gain new employment, his new job left him making less money—an annual salary of $127,188.

¶11. Brian claimed that this reduction in his income left him unable to maintain his alimony payments under the terms of the original agreement. Brian unilaterally discontinued his full alimony payments without an order of the chancery court. Specifically, Brian reduced his payments to $945 in September 2014, and then to $735 in April 2015.

¶12. Ruth'e filed an answer denying Brian's entitlement to a modification of his alimony obligation. Ruth'e argued that the parties never intended the alimony in question to be periodic alimony, but lump-sum alimony—and not subject to modification.

¶13. Looking to the totality of the agreement, the chancellor found that the alimony provision was to be considered lump sum and not periodic—and thus not subject to modification. Accordingly, the chancellor found that the issues of Ruth'e's alleged de facto marriage, along with Brian's reduction of income, were irrelevant. Brian now appeals.

## STANDARD OF REVIEW

¶14. The Mississippi Supreme Court has held that an appellate court "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused

4

his discretion, was manifestly wrong [or] clearly erroneous [,] or [applied] an erroneous legal standard." *Wilburn v. Wilburn*, 991 So. 2d 1185, 1190 (¶10) (Miss. 2008). Regarding legal questions, this Court applies a de novo standard of review. *Id*.

**DISCUSSION**

**I.**     **The chancellor did not abuse his discretion in categorizing the alimony provision of the agreement as lump-sum alimony rather than periodic alimony.**

¶15.    Brian argues that the chancellor abused his discretion in categorizing the alimony provision of the agreement as lump-sum alimony rather than periodic alimony. Specifically, Brian argues that the alimony provision is ambiguous, and so must be interpreted as providing for periodic alimony, terminable upon Ruth'e's de facto remarriage.

¶16.    "To determine whether alimony is lump sum or periodic, we must examine the substance, without regard to labels." *Chroniger v. Chroniger,* 914 So. 2d 311, 314 (¶10) (Miss. Ct. App. 2005) (quoting *Creekmore v. Creekmore,* 651 So. 2d 513, 518 (Miss. 1995)). "As a general rule, periodic alimony has no fixed termination date; instead, it automatically terminates at the death of the obligor or the remarriage of the obligee." *West v. West*, 891 So. 2d 203, 212 (¶21) (Miss. 2004).

¶17.    "Lump sum alimony may be payable in a single lump sum or fixed periodic installments. Lump sum alimony is a final settlement between husband and wife and may not be changed or modified by either party, absent fraud." *Armstrong v. Armstrong*, 618 So. 2d 1278, 1281 (Miss. 1993). In short, periodic alimony may be modified, while lump-sum alimony "is not considered to be in the nature of continuing support, but rather a property

5

transfer which is vested in the recipient spouse at the time said alimony is awarded."

*McDonald v. McDonald*, 683 So. 2d 929, 931 (Miss. 1996).

¶18.   Again, the alimony provision of the property-settlement agreement provides:

> A. ~~Periodic~~ Alimony.  [Brian] agrees to pay unto [Ruth'e] as ~~periodic~~ alimony the monthly sum of $2,850.00 per month, beginning the first day of the month immediately following execution of this Agreement for a period of thirty-six (36) months, reducing to $2,600.00 for a period of thirty-six (36) months, [and] reducing to $2,100.00 for a period of thirty-six (36) months.  ~~Periodic~~ [A]limony shall then reduce to $1,750.00 until September 1, 2019, or [Brian's] retirement, whichever occurs later, whereupon ~~periodic~~ alimony shall cease. Said ~~periodic~~ alimony shall be payable one-half on the 1st and one-half on the 15th of each month.  In addition, such ~~periodic~~ alimony shall cease  upon the remarriage of [Ruth'e] or upon the death of either party[,] whichever occurs first.  The payments shall be deductible by [Brian] and includable as income by [Ruth'e], both for state and federal income tax purposes. [Handwritten addition as follows:] *Said payments are further non-modifiable, except as set forth herein above.*

¶19.   As we believe the chancellor correctly emphasized in his opinion,  it is clear that the alimony provision has characteristics of both periodic and lump-sum alimony.  On the one hand, it is like periodic in that the payments terminate upon the death of either party, or upon the remarriage of Ruth'e.  And the payments are treated as income to Ruth'e and a deduction to Brian for income-tax purposes.  On the other hand, the alimony is like lump-sum alimony in that Brian is required to pay Ruth'e fixed sums, in three consecutive thirty-six-month periods, and then at the expiration of the third thirty-six-month period, Brian is required to pay another fixed sum until September 1, 2019, or until Brian retires, whichever occurs later.

¶20.   Brain argues that the alimony award is ambiguous, and according to *In re Dissolution of Marriage of Wood*, 35 So. 3d 507, 513 (¶11) (Miss. 2010), the ambiguities should be construed against Ruth'e.  "The mere fact that the parties disagree about the meaning of a

provision of a contract does not make the contract ambiguous as a matter of law." *Cherry v. Anthony, Gibbs, Sage*, 501 So. 2d 416, 419 (Miss. 1987).

¶21. But here, when looking to the terms of the agreement, the parties' intent is evident. The word "periodic" was initially inserted into the alimony paragraph six times. But, in the course of negotiations by the parties, the word was later stricken through and initialed by the parties, in every place the word appeared. This evidences a clear intent that the parties did not want for the alimony to be considered periodic. Moreover, the handwritten change on the agreement which states, "said payments are further non-modifiable, except as set forth herein above," is further evidence of the parties' intent. Indeed, this portion, like the striking of the word "periodic," also was initialed by both parties.

¶22. Furthermore, the agreement outlines a certain payment amount, and specific payment dates. The agreement also leads to a specified end date. What is more, Brian also agreed to assure his alimony payments by maintaining certain insurance policies. This, too, is further evidence that the alimony here is lump sum—not periodic.

¶23. Relying on *Wray v. Wray*, 394 So. 2d 1341, 1345 (Miss. 1981), Brian also asserts that our caselaw creates a presumption toward periodic alimony when the agreement lacks clear, unequivocal language labeling the provision as lump sum. While *Wray* does stand for this proposition, we find here that clear and unequivocal intent—expressed by the parties' striking of the term periodic multiple times in the agreement—renders Brian's reliance on this presumption misplaced.

¶24. Accordingly, we find that the chancellor did not abuse his discretion in categorizing

the alimony provision of the agreement as lump-sum alimony rather than periodic alimony. This issue is without merit.

> **II.    The chancellor did not abuse his discretion in denying Brian's request for a modification of his alimony obligations on the basis of cohabitation, de facto marriage, and change in income.**

¶25.    Relying on his same argument that the alimony was periodic, Brian also argues that the chancellor abused his discretion in determining that Ruth'e's alleged cohabitation and Brian's reduction of income were irrelevant to the court's consideration of Brian's request for a modification.  "In the case of lump sum alimony . . . said alimony is not considered to be in the nature of continuing support, but rather a property transfer which is vested in the recipient spouse at the time said alimony is awarded."  *McDonald*, 683 So. 2d at 931.  Accordingly, due to our findings in the previous issue, considerations of Ruth'e's alleged cohabitation, her de facto marriage, or Brian's decrease in income are "irrelevant, given that an order for lump sum alimony provides the recipient spouse with a vested right to receive said payments."  *Id*.  Therefore, we find that the chancellor did not abuse his discretion in denying Brian's request for a modification of his alimony.

## CONCLUSION

¶26.    Reviewing the record, we find no abuse of discretion on the part of the chancellor. Therefore, we affirm.

¶27.    **THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**