# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-CA-01385-SCT

*CHASITY NICOLE SMITH WILBURN*

*v.*

*WILLIAM HAYWOOD WILBURN*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/31/2007 |
| TRIAL JUDGE: | HON. GLENN ALDERSON |
| COURT FROM WHICH APPEALED: | LAFAYETTE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JOHN THOMAS LAMAR, JR. |
| | DAVID M. SLOCUM, JR. |
| ATTORNEY FOR APPELLEE: | T. SWAYZE ALFORD |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND REMANDED - 10/02/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1.     Chasity Nicole Smith Wilburn and William Haywood Wilburn divorced on grounds of irreconcilable differences. Their "Property Settlement Agreement" provided for joint legal custody of their two minor children "with [William] having primary physical custody and [Chasity] having reasonable periods of visitation . . . ." Following an agreed modification by the parties increasing Chasity's visitation, Chasity filed an "Amended Petition for Modification of Divorce Decree" in the Chancery Court of Lafayette County, Mississippi, seeking a modification of custody and/or visitation rights. At the subsequent hearing, the chancellor stayed the proceedings and appointed an independent psychologist to interview the parents and children, then report his recommendations. In the interim, Chasity's

visitation was increased further by order of the chancery court. Following receipt of the psychologist's report, a hearing was held and an order subsequently entered providing that William would retain primary physical custody of the minor children and reducing Chasity's visitation to essentially that provided for in the original "Property Settlement Agreement." Following denial of her "Motion for Reconsideration," Chasity filed notice of appeal.

**FACTS**

¶2.     On April 15, 2004, William and Chasity filed a "Joint Complaint for Divorce" in the chancery court on the basis of irreconcilable differences. The joint complaint further requested that William and Chasity "be awarded joint legal custody of the parties' minor children[1] . . . ." On June 8, 2004, William and Chasity filed a "Property Settlement Agreement" providing, in pertinent part, that the couple would have joint legal custody of the minor children, "with [William] having primary physical custody and [Chasity] having reasonable periods of visitation . . . ." Specifically, Chasity would have visitation with the minor children every other weekend from 6:00 p.m. on Friday evening through 6:00 p.m. on Sunday evening; for six weeks during the summer in two-week, non-consecutive intervals; for holidays alternating yearly; and "such other periods of visitation as may be mutually agreed upon between the parties." The "Property Settlement Agreement" expressly added that:

> it is understood and agreed between the parties that this Agreement is entered into without undue influence, fraud, coercion, or misrepresentation, or for any reason not herein stated. The provisions in this Agreement and their legal effect are fully known and understood by each of the parties, and each party

---

[1]The couple had two children, T.W., born April 3, 1994, and C.W., born June 14, 1995.

2

acknowledges that the Agreement is fair and equitable regardless of any grounds for divorce, known or unknown, that may now or hereafter exist, and that it is being entered into voluntarily . . . .

. . .

It is also understood and agreed that this Agreement stands alone as a contract between the parties and shall remain in full force and effect *unless and until modified by subsequent Agreement of the parties or superseded by a lawful Order of a [c]ourt of competent jurisdiction*.[2]

(Emphasis added). On June 16, 2004, the chancery court entered a "Judgment for Divorce – Irreconcilable Differences" in accord with the "Joint Complaint for Divorce" and "Property Settlement Agreement."[3]

¶3.     Nearly six months later, on December 12, 2004, Chasity filed a "Petition for Modification of Visitation Rights and For Citation of Contempt," which included the allegation that:

[s]ince the parties' separation before their divorce and prior to entry of the Decree of Divorce, the parties shared physical custody on an alternating weekly basis. [Chasity] was led to believe by [William] that the same schedule would continue, and it did so until entry of the decree in this case.

Chasity maintained that but for this purportedly fraudulent action, "she would not have executed the Property Settlement Agreement and proceeded forward without seeking advise [sic] of counsel." She further asserted that strict adherence to the visitation schedule outlined in the "Property Settlement Agreement" constituted "a material change in circumstances

---

[2]In entering into the "Property Settlement Agreement," William was represented by counsel, while Chasity was not.

[3]Regarding the "Property Settlement Agreement," the chancery court found "it to be a complete, fair, and equitable settlement of the property rights and obligations of the parties as to the parties' . . . child support and visitation."

adverse to the best interests of the children warranting modification of the Divorce Decree." William's subsequently-filed answer denied Chasity's allegations. A May 2, 2005, hearing before the chancery court resolved the matter. The following agreement was read into the record by counsel for Chasity:

> based upon an agreement between the parties the visitation schedule that is currently incorporated into the Final Decree of Divorce was *modified to include visitation between [Chasity] and the two children every Wednesday night. There will also be increased visitation during the Christmas [h]oliday, and also with [Chasity] on every Spring Break. . . .* [A] part of the agreement is *when they are not in school the holiday visitation that is set forth in the agreement will control*, that *while the [children] are in school it will be on each Wednesday night.*

(Emphasis added).

¶4. On February 23, 2006, William and Chasity filed a "Joint Motion" requesting "a hearing in relation to unresolved matters stemming from their Final Decree of Divorce." The motion provided that:

> [t]he parties were before this Honorable Court [i]n May . . . 2005 and were admonished in regard to the same. However, a dispute has arisen in relation to the Court's input. Therefore, the parties respectfully request that the [c]ourt hear testimony and evidence and clearly establish parameters for visitation, contact between the minor children and [Chasity], and related issues pertaining to visitation.

On May 19, 2006, Chasity filed an "Amended Petition for Modification of Divorce Decree" claiming that "[t]he actions of [William] toward his children and [Chasity] since entry of the last decree in this case constitutes a material change in circumstances warranting modification of custody or, in the alternative, modification of visitation rights." Chasity sought "temporary relief in order to increase the amount of time when the children are in her care and custody and would show the intense anguish and resulting effect of the Divorce

4

Decree warrants the same." William's answer and counter-complaint denied Chasity's allegations; requested that Chasity be held in contempt for allegedly "willfully and wantonly" refusing to reimburse William for her one-half of the children's expenses and declining to return the children to William at the conclusion of her visitation; and added that:

> Chasity continues to tell the minor children that they can choose where they want to live once they reach the age of 12 years old. This action and attitude by Chasity has had an adverse effect on the minor children. Chasity has purchased inappropriate reading material and clothing for the minor children. Chasity has encouraged the minor children to lie to [William]. Chasity's actions constitute a material change in circumstances adverse to the health and welfare of the children since the Judgment of Divorce and [William] requests the Court to modify Chasity's visitation . . . .

¶5. On October 18, 2006, a hearing on Chasity's amended petition and William's answer and counter-complaint was held before the chancery court. Julie Davidson, a graduate-student therapist at the University of Mississippi Psychological Services Center, who had met with the entire Wilburn family at various times but primarily saw the minor children, was the only witness examined. According to Davidson, T.W. had threatened to commit suicide and had made suicidal gestures at various times. Davidson testified that on February 22, 2006, T.W. had stated the desire to self-injure only when at William's house. Davidson added that T.W. reported that this depression was the result of a poor relationship with William and a desire to spend more time with Chasity. Davidson further testified that both T.W. and C.W. reported concerns about excessive consumption of alcohol by William. Finally, Davidson testified that Chasity had informed T.W. about what transpired in one of Davidson's sessions with William and Chasity. According to Davidson, this led to T.W.'s claim of being "upset that [William] was mean to [Chasity]." Thereafter, the chancellor decided "to stop the trial

5

at this stage and . . . appoint Dr. Wyatt Nichols as a psychologist."[4]  According to the chancellor:

> [Chasity] is complaining about a visitation schedule that she agreed to and signed . . . .  And, evidently, she's been discussing it in front of the children. That's what is troubling me. . . . [I]t appears that these children are being manipulated by a mother that wants to set the visitation the way she wants to set it; and by a daddy that's so doggone strict you can't knock him in the head and get any sense in him.  Your problem here is that you've got two people that are so strong willed and so self-centered . . . that these two [children] are suffering.

The October 24, 2006, order of the chancery court appointed Dr. Nichols "to interview the parents and children in this action" and continued the matter "until the report of Dr. Nichols has been received and he advises that the matter should go forward."  Regarding visitation, the order provided that "[Chasity's] visitation will be *increased* to include, in addition to every Wednesday night visitation, that *her every other weekend visits will conclude when the children resume school on Monday mornings* rather than terminating on Sunday evenings" and "[t]he minor children shall have telephone access to [Chasity] when in the custody of [William] and will have access to [William] when in the custody of [Chasity]."  (Emphasis added).

¶6.    Following receipt of Dr. Nichols' report,[5] the chancellor set the matter for hearing on May 30, 2007.  The transcript of that hearing is absent from the record, but the subsequently-

---

[4]The chancellor noted, "no more sessions [at Ole Miss].  After what I saw this morning I was appalled."  Furthermore, as William's appellate brief notes, "[n]either party objected to the [c]ourt's order appointing Dr. Nichols, and neither party objected to the continuance of trial."

[5]This report is not contained in the record.

entered June 1, 2007, order of the chancery court provided that William retained primary

physical custody of the minor children and Chasity's "minimum visitation" was reduced to:

> [e]very other weekend from 5:00 p.m. on Friday until 5:00 p.m. Sunday.
>
> . . .
>
> Six (6) weeks of visitation during the summer being the first two full weeks in June, the last full week of June, the first full week of July, and the last two weeks of July.
>
> . . .
>
> Chasity shall have telephone visitation with the minor children each Tuesday and Thursday night at 7:00 p.m. The children may have additional telephone visitation with Chasity and be allowed to call her when they desire.[6]

According to the chancellor:

> at the conclusion of the matter [Chasity] became very loud and boisterous in the courtroom. I directed her counsel . . . to get her out of the courtroom before I jailed her. She left the courtroom talking back to the [c]ourt, and as [he was] about to exit the courtroom her father cursed the [c]ourt. So I issued a capias for her father and he went to the Lafayette County Detention Center as the result of that.[7] And [Chasity] has gone to the Lafayette County

---

[6]Chasity contends that this order "changed her visitation in three ways: (1) it revoked her Wednesday night visitation with the minor children; (2) it changed her alternating-weekend visitation to end on Sunday night instead of Monday morning; and (3) it granted her telephone visitation every Tuesday and Thursday night and additionally, whenever the minor children desire."

[7]The May 30, 2007, order of the chancery court provides that Chasity's father, John Henry Smith, referred to the chancellor as "a sorry piece of shit!" As a result, Smith was deemed in contempt of court, ordered incarcerated for thirty (30) days in the Lafayette County Detention Center, and fined $100.00. Chasity subsequently filed a "Motion for Reconsideration," providing that Smith is "the sole provider for his household" and that "[i]t is believed that incarceration will cost [Smith] his job." The June 1, 2007, "Order of Release" of the chancery court suspended the remaining twenty-eight (28) days of Smith's incarceration and ordered him released upon payment of the $100.00 fine.

Detention Center cursing the [c]ourt and everybody else, and has continued to do it.[8]

¶7.     On June 12, 2007, Chasity filed a "Motion for Reconsideration" of the June 1, 2007, order of the chancery court regarding custody and visitation. According to Chasity, "Dr. Nichols advised that the [children] 'do need to spend more time with her[,]' referencing Chasity. He recommended that 'more time with [Chasity] might be the best option' with the father having custody." Notwithstanding the recommendation of Dr. Nichols, "[t]he schedule implemented by the [c]ourt decreased the visitation arrangement in place when Dr. Nichols made his report . . . and decreased [Chasity's] telephone contact." William responded that "any additional contact with Chasity is only more disruptive to the routine of the minor children. Chasity continues to discuss the court proceedings with the minor children, even to the extent of allowing the children to listen to a tape recording of the Court's ruling of May 30, 2007."

¶8.     On July 2, 2007, a hearing on Chasity's "Motion for Reconsideration" was held before the chancery court. At the hearing, the chancellor asked Chasity, "it is alleged here that you allowed the children to listen to the tape recording of the Court's ruling on May 30, is that correct?" Chasity responded that no such recording existed, but that "[William] told the kids some things that did not happen in court on that day, so it was stated to him that they would know what happened." She then admitted that she told the minor children they could listen to a tape recording of the May 30, 2007, proceeding, "[t]o get [William] to tell the truth." The chancellor responded:

---

[8]This Court notes that this finding is suspect as no evidence was presented that the described conduct was within hearing of the circuit judge.

8

[y]ou are going to learn some day to do what the [c]ourt has told you to do, but you go against the [c]ourt Order all of the time.[9]  I was prepared to give you extended or additional visitation until this happened.  I am sorry.  The disruption that you and your family caused in the courtroom, and you continue to discuss these legal proceedings with your children, and the [c]ourt has admonished you time and time again not to.  I'm denying the motion.

The July 19, 2007, order of the chancery court denied Chasity's "Motion for Reconsideration."  On August 10, 2007, Chasity filed "Amended Notice of Appeal."[10]

## ISSUES

¶9.    This Court will consider:

(1) Whether Chasity's appeal is untimely.
(2) Whether the chancery court erred in not allowing Chasity a hearing on her amended petition for modification of the divorce decree.
(3) Whether the chancery court erred in failing to find a material change in circumstances or substantial evidence to support a modification of custody.
(4) Whether the chancery court erred in modifying Chasity's visitation.

## STANDARD OF REVIEW

¶10.    "This Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Sanderson v. Sanderson*, 824 So. 2d 623, 625-26 (Miss. 2002).  In short, "our standard of review defers much to the chancellor's final judgment." *Id*. at 626.  Regarding legal questions, this Court applies a de novo standard of review.  *See* ***Russell v. Performance Toyota, Inc.***, 826 So. 2d 719, 721 (Miss. 2002).

---

[9]The court order to which the chancellor refers is unclear from the record.

[10]"Notice of Appeal" was filed on August 8, 2007.

9

## ANALYSIS

### I. Whether Chasity's appeal is untimely.

¶11. Mississippi Rule of Civil Procedure 59(e) provides that "[a] motion to alter or amend the judgment shall be filed *not later than ten days after entry of the judgment*." Miss. R. Civ. P. 59(e) (emphasis added). This ten-day requirement is absolute, and "the court is not permitted to extend this time period." Miss. R. Civ. P. 59(e) cmt. Only if a party files a *timely* motion to alter or amend the judgment under Rule 59 does "the time for appeal for all parties ru[n] from the entry of the order disposing of the last such motion outstanding." Miss. R. App. P. 4(d). Otherwise, "the notice of appeal required by Rule 3 shall be filed with the clerk of the trial court within 30 days after the date of entry of the judgment or order appealed from." Miss. R. App. P. 4(a). That thirty-day requirement is inflexible in the case *sub judice* as, in civil cases, "the time for taking an appeal as provided in Rules 4 or 5 may not be extended." Miss. R. App. P. 2(c).

¶12. On June 12, 2007, Chasity filed a "Motion for Reconsideration"[11] of the June 1, 2007, order of the chancery court. Applying the time-computation standards outlined in Mississippi Rule of Appellate Procedure 26(a), Chasity's motion should have been filed no later than Monday, June 11, 2007. *See* Miss. R. App. P. 26(e); Miss. R. Civ. P. 59(e). As such, William contends that Chasity's time for filing an appeal commenced on June 1, 2007, and, as she did not file notice of appeal until sixty-eight days later, on August 8, 2007, her

---

[11]A motion for reconsideration is treated as a motion to alter or amend judgment pursuant to Mississippi Rule of Civil Procedure 59(e). *See* ***Boyles v. Schlumberger Tech. Corp.***, 792 So. 2d 262, 265 (Miss. 2001).

10

appeal is barred as untimely. Chasity responds that this issue is procedurally barred as "[b]efore an issue can be presented to this Court, it must first be presented to the trial court."

¶13. This Court finds that Chasity's "Motion for Reconsideration" was untimely. However, there is no evidence in the record that William either objected or responded to Chasity's "Motion for Reconsideration." The Mississippi Court of Appeals addressed a similar issue in *Scally v. Scally*, 802 So. 2d 128 (Miss. Ct. App. 2001), stating:

> [t]his Court does not review matters on appeal that were not first raised at the trial level. *Shaw v. Shaw*, 603 So. 2d 287, 292 (Miss. 1992). Before an issue can be presented to this Court, it must first be presented to the trial court. This is done by an objection. *Queen v. Queen*, 551 So. 2d 197, 201 (Miss. 1989). A timely objection brings the issue to the court's attention, and gives it the opportunity to address the issue. *Kettle v. State*, 641 So. 2d 746, 748 (Miss. 1994).

*Scally*, 802 So. 2d at 132. Based upon that same reasoning, this Court concludes that William is procedurally barred from raising this issue for the first time on appeal.

**II. Whether the chancery court erred in not allowing Chasity a hearing on her amended petition for modification of the divorce decree.**

¶14. "Before an issue may be assigned and argued in this Court, it must first be presented to the trial court." *In re: Hampton*, 919 So. 2d 949, 957 (Miss. 2006) (citation omitted). Chasity argues that she:

> was denied the opportunity to present factual support for her Amended Petition for Modification of Divorce Decree. In fact, her visitation was modified in a manner to reduce her visitation even though the only evidence in the record is the direct examination of Julie Davidson, which encouraged the court to increase [Chasity's] visitations with the minor children. Clearly, [Chasity] was denied her due process rights. As a result, this matter should be reversed and remanded for a hearing on the merits of the issues of child custody and visitation.

11

As Chasity's due-process argument is raised for the first time on appeal, this Court deems it procedurally barred. *See **In re Hampton***, 919 So. 2d at 957. Nonetheless, this Court will also address this issue on the merits.

¶15.    This Court has stated that:

> [t]he parties should be afforded a full, complete hearing at which the parties have an opportunity to call witnesses in their behalf and be heard by themselves or counsel. ***Fortenberry v. Fortenberry***, 338 So. 2d 806 (Miss. 1976). If a full and complete hearing is not allowed by refusing the defendant his opportunity to present evidence, then the defendant is thereby deprived of due process. ***Id***.

***Weeks v. Weeks***, 556 So. 2d 348, 349-50 (Miss. 1990). *See also **Morreale v. Morreale***, 646 So. 2d 1264, 1270 (Miss. 1994) ("[e]very defendant has a right to introduce evidence at a hearing."). In ***Weeks***:

> the defendant offered to prove, by his own testimony and the testimony of other witnesses, that he had, indeed, paid his ex-wife the money she claimed he had not paid for the nonpayment of which he was held in contempt. However, the Chancellor shut off defendant's proof, saying that he was satisfied that the defendant was in contempt.

***Weeks***, 556 So. 2d at 349. This Court concluded that the defendant was deprived of his right to a judicial hearing "by the Chancellor's refusal to allow the defendant to present his evidence." ***Id***. Similarly, in ***Childers v. Childers***, 717 So. 2d 1279 (Miss. 1998), this Court found that:

> [i]t was a denial of James' rights to due process for the Chancellor to deny his motion without holding a hearing where James is given the opportunity to provide factual support for the allegation in the pleading that there has been a material change in circumstances since the rendering of the former decree.

***Id***. at 1281.

¶16. The case *sub judice*, however, is plainly distinguishable from ***Weeks*** and ***Childers***. Chasity did not object to the appointment of Dr. Nichols on October 18, 2006, or subsequently object at the May 30, 2007, hearing, in her June 12, 2007, "Motion for Reconsideration," or, finally, at the July 2, 2007, hearing that she was being denied her due process in not being able to present further witnesses. As William contends:

> [i]t was Chasity's burden to put on her proof. If she felt that she was not allowed to put on evidence in support of her [p]etition, then she should have moved the court for an opportunity to put those witnesses on, and if the Chancellor did not allow her to do so, then she should have made an offer of proof as to the testimony she was not allowed to present.

The more analogous case is ***Morreale*** in which "Martin offered no testimony, evidence, argument or statement, and . . . there was no objection filed with the court." ***Morreale***, 646 So. 2d at 1270. Based thereon, this Court found that "[h]ad he objected . . . and offered proof of evidence that was to be presented, a different outcome might result, but there is no error to complain of in the chancellor's confirmation." ***Id***. Similarly, this Court concludes that in the absence of an objection and offer of proof by Chasity, her due-process argument is without substantive merit.

**III. Whether the chancery court erred in failing to find a material change in circumstances or substantial evidence to support a modification of custody.**

¶17. The June 8, 2004, "Property Settlement Agreement" between William and Chasity provided that the couple would have joint legal custody of the minor children, "with [William] having primary physical custody and [Chasity] having reasonable periods of visitation . . . ." The June 1, 2007, order of the chancery court regarding custody and visitation followed that agreement, providing that "primary physical custody of the minor

13

children shall remain in [William], with Chasity having visitation." Chasity argues on appeal, however, that William "agreed to split weeks with the children and *his breach of this agreement had an adverse effect* on the minor children which necessitated a change in custody." (Emphasis added). As such, she asserts that the chancery court erred in not modifying custody.

¶18. This Court has stated that "[i]t would be tantamount to defrauding the court for parties to present to the court a property settlement agreement, which is subsequently incorporated into the final decree, while actually intending to abide by a contradictory private contract. This is clearly against public policy." **Sullivan v. Pouncey**, 469 So. 2d 1233, 1234 (Miss. 1985). *See also* **Traub v. Johnson**, 536 So. 2d 25, 26 (Miss. 1988) ("[t]he **Sullivan** opinion clearly states that a prior agreement entered into by the parties is not enforceable if it is not approved by the court."). The "Property Settlement Agreement" expressly states that "[i]t is . . . understood and agreed that this Agreement stands alone as a contract between the parties and shall remain in full force and effect unless and *until modified by subsequent Agreement* of the parties *or superseded by a lawful Order* of a [c]ourt of competent jurisdiction." (Emphasis added). Though Chasity entered into the "Property Settlement Agreement" without counsel, this Court has stated that "having elected to proceed without an attorney, a person is bound by the same rules of practice and procedure as an attorney." **Bullard v. Morris**, 547 So. 2d 789, 790 (Miss. 1989). Therefore, Chasity is bound by the terms of the "Property Settlement Agreement" regarding custody "unless and until modified by subsequent Agreement of the parties or superseded by a lawful Order of a [c]ourt of

14

competent jurisdiction." In the case *sub judice*, neither modification nor supersession occurred as to *custody*.

¶19. Regarding the modification of child custody, the test is "(1) whether there has been a material change in circumstances which adversely affects the welfare of the child and (2) whether the best interest of the child requires a change of custody." ***Floyd v. Floyd***, 949 So. 2d 26, 29 (Miss. 2007) (citing ***Weigand v. Houghton***, 730 So. 2d 581, 585 (Miss. 1999)). As the chancellor made no specific finding on this fact issue, "we are required by our prior decisions and by sound institutional considerations to assume that the chancellor resolved all such fact issues in favor of appellee." ***Cheek v. Ricker***, 431 So. 2d 1139, 1143-44 (Miss. 1983) (citing ***Harris v. Bailey Ave. Park***, 202 Miss. 776, 791, 32 So. 2d 689, 694 (1947)). Chasity alleges that the purported separate agreement, and William's refusal to abide thereby, is a "material change in circumstances" which "had an adverse effect on the minor children . . . ." However, as the "Property Settlement Agreement" expressly provides that it was "fair and equitable" and freely entered by Chasity, this Court concludes that the chancellor did not abuse his discretion in keeping custody consistent with the "Property Settlement Agreement" in his June 1, 2007, order. *See* ***Yates v. Yates***, 284 So. 2d 46, 47 (Miss. 1973) ("even though the record does not clearly and precisely show on what ground or specific finding of fact the decision of the lower court was made, we, as an appellate court, will affirm the decree if the record shows any ground upon which the decision may be justified.").

15

**IV.** **Whether the chancery court erred in modifying Chasity's visitation.**

¶20. However, as to visitation:

> [a]ll that need be shown is that there is a prior decree providing for reasonable visitation rights which isn't working and that it is in the best interests of the children as fostering a positive and harmonious relationship between them and their divorced parents to have custody provisions made specific rather than flexible and attendantly vague.[12]

*Cox*, 490 So. 2d at 869. The chancellor is granted "broad discretion" in visitation determinations and "[t]his Court will not reverse a chancellor's findings of fact so long as they are supported by *substantial evidence in the record*." *Weigand*, 730 So. 2d at 587 (citing *Tedford v. Dempsey*, 437 So. 2d 410, 417 (Miss. 1983)) (emphasis added). *See also Olson*, 799 So. 2d at 929 ("[o]n visitation issues, as with other issues concerning children, the chancery court enjoys significant discretion in making its determination of what is in the best interest of the child.").

¶21. The "Property Settlement Agreement" provided Chasity with visitation every other weekend from 6:00 p.m. on Friday through 6:00 p.m. on Sunday; six weeks of summer visitation in two-week, non-consecutive intervals; holidays alternating yearly; and any other visitation as mutually agreed upon with William. The "Property Settlement Agreement" added that it would "remain in full force and effect unless and until modified by subsequent Agreement of the parties or superseded by a lawful Order of a [c]ourt of competent jurisdiction." The post-hearing resolution of May 2, 2005, constituted such a modification

---

[12]The "material change in circumstances" rule has no application regarding visitation modification. *See Cox v. Moulds*, 490 So. 2d 866, 869 (Miss. 1986).

16

of visitation. That agreement provided for added visitation between Chasity and the minor children each Wednesday night during the school year, as well as increased visitation during the Christmas holiday and spring break. The October 24, 2006, order of the chancery court amounted to a subsequent supersession "by a lawful Order of a [c]ourt of competent jurisdiction." That order granted Chasity further visitation, extending weekend visitation to Monday morning when the children resumed school and providing for unlimited telephone access by the children with each parent.

¶22. Following the May 30, 2007, hearing, the June 1, 2007, order was entered, sharply reducing Chasity's visitation rights, *see* footnote 6 *supra*, without providing an explanation therefor. According to Chasity's undisputed assertion, this decision plainly conflicted with the recommendation of Dr. Nichols that the minor children "do need to spend more time with [Chasity.]" At the July 2, 2007, hearing on Chasity's "Motion for Reconsideration," the chancellor upheld the visitation provided in the June 1, 2007, order, due to "[t]he disruption that [Chasity] and [her] family caused in the courtroom, and you continue to discuss these legal proceedings with your children, and the [c]ourt has admonished you time and time again not to." Just prior to that explanation, however, the chancellor noted, "I was prepared to give you extended or additional visitation until this happened."

¶23. "Our Court has held that the best interest of the child is the main concern in determining visitation." ***Rogers v. Morin***, 791 So. 2d 815, 820 (Miss. 2001) (citing ***Dunn v. Dunn***, 609 So. 2d 1277, 1286 (Miss. 1992)). Given the May 2, 2005, modification and the October 24, 2006, order of the chancery court, each granting Chasity additional visitation, along with the recommendation of Dr. Nichols, not contested by the parties, the chancellor's

17

subsequent decision to reduce Chasity's visitation raises a question as to whether that decision was retributive, rather than in the "best interest[s] of the child[ren]." *Id*. Moreover, the record is void of any court order which Chasity openly went "against . . . all of the time." Accordingly, this Court concludes that the chancellor's findings of fact reducing Chasity's visitation constitute an abuse of discretion, as they are not "supported by substantial evidence in the record." ***Weigand***, 730 So. 2d at 587. *See also **Sanderson***, 824 So. 2d at 625-26.

## CONCLUSION

¶24.  Based upon the aforementioned analysis, this Court reverses the Chancery Court of Lafayette County's June 1, 2007, order and subsequent denial of Chasity's "Motion for Reconsideration," and remands this case for a hearing on visitation.

¶25.  **REVERSED AND REMANDED.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, GRAVES AND DICKINSON, JJ., CONCUR.  EASLEY, J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.  LAMAR, J., NOT PARTICIPATING.**

18