IRVING, J., for the Court:
 

 ¶ 1. This appeal concerns the custody of two minor children, Sarah and Jane
 
 *552
 
 Smith.
 
 [1]
 
 In May 2007, custody of Sarah and Jane was given to John and Cynthia Smith, the children’s paternal grandparents. The Smiths were awarded custody against the wishes of Kristin Thompson, the children’s natural mother. In May 2008, Thompson filed a motion requesting that custody of the children be returned to her. The Copiah County Chancery Court denied the motion, finding that an adverse change in circumstances affecting the children had not occurred. Feeling aggrieved, Thompson appeals and asserts that the chancellor applied an erroneous legal standard in denying Thompson’s motion.
 

 ¶ 2. Finding no reversible error, we affirm the judgment of the chancery court.
 

 FACTS
 

 ¶ 3. The Smiths were granted custody of them grandchildren in 2007 after Thompson was indicted on several felony drug charges. In order to provide a factual backdrop for this case, we quote at length from the chancellor’s 2007 judgment wherein the Smiths were granted custody:
 

 The evidence presented clearly shows that the [Smiths] have been active in the children’s lives since their respective births. In 2000, the [Smiths] had custody of the children at the request of [Thompson] due to [Thompson’s inability to care for the children at that time. Thereafter, [Thompson] showed stability, married a gentleman who was enlisted in the military, and otherwise showed responsible behavior; therefore, the [Smiths] returned custody of the children to [Thompson] at [Thompson’s request. Subsequently, [Thompson] and the subject husband divorced and, thereafter, [Thompson] moved on several occasions.
 

 In 2005, [Thompson] was indicted by a grand jury in Rankin County, Mississippi,] on three (3) felony counts involving controlled substances. In November 2005, the families agreed that the [Smiths] should take custody of the children. To date, the children have been in the [Smiths]’ custody.
 

 The [Smiths] do not desire to return custody of the children to [Thompson], as they believe [Thompson] is unstable and unfit. However, [Thompson] argues that she has changed and is now stable and fit to care for the children. The laws in Mississippi favor a natural parent having custody of her children.
 

 The Guardian Ad Litem’s report was introduced as evidence. Some of the issues raised within the report involve [Thompson]’s failure to adequately clean, feed, supervise, and bathe the children. [Thompson] denies these allegations. One teacher ... reported that she took food from the teachers’ lounge on a regular basis and gave it to [Sarah]. This evidence tips the scales in favor of believing that, indeed, [Thompson] did not clean, feed, supervise, and bathe the children, as- [the teacher] has no reason to fabricate such a story.
 

 [Thompson]’s immorality has been made an issue. The evidence shows semi-nude and other risqué photographs of [Thompson] on her “myspace.com” profile. Also, the children are on the same web-page as these photographs of [Thompson], Posting photographs of the children on a web-page shared with semi-nude and risqué photographs shows, at a minimum, poor judgment on [Thompson]’s behalf. Numerous people use the internet to view nude photo
 
 *553
 
 graphs, and having pictures of the children on such a site invites the possibility of sexual predators viewing photographs of the children and puts the children in danger. [Thompson] could have removed the semi-nude and other risqué photographs, but did not until told to do so by her attorney. [Thompson] did not see anything inappropriate with her “myspace.com” profile.
 

 [Thompson] engaged in sexual activity outside of marriage which resulted in her becoming pregnant sometime last year. [Sarah] has gained knowledge and understanding of a sexual device, beyond the scope of what a seven (7) to ten (10) year old should know. This sexual device was found at [Thompson’s house in a roommate’s room. [Thompson] chose the roommate, and thereby chose someone who would have such a device in close proximity to children. Also, the evidence shows that the roommate apparently had a discussion about the sexual device with [Sarah].
 

 Evidence further shows that the children have seen [Thompson] sleeping in the same bed with men and/or women. This [c]ourt is not persuaded that these men and/or women were [Thompson’s relatives, as the children should be able to identify relatives, yet when speaking with the Guardian Ad Litem, the children simply referred to these individuals as “men” or “women.”
 

 [[Image here]]
 

 The children told the Guardian Ad Li-tem, at a time when they were ages eight (8) and nine (9) respectively, that they can distinguish between cigarettes and marijuana. Regardless of whether or not the children can actually make such a distinction, the fact that they are exposed to an environment that allows them to believe this is a “smoking gun.”
 

 Looking at the numerous drug screens, there is no doubt that two are “positive.” [Thompson] has completed a drug rehabilitation program and wants the [c]ourt to believe that she has relapsed only once, such relapse occurring in August 2006. However, [Thompson] has a three (3) count indictment involving controlled substances and stands to go to jail for a potential ninety (90) years. [Thompson]’s position simply does not make sense.
 

 ⅜ ⅝ ⅝
 

 Sex, drugs, and basic care needs are the crux of the [Smiths]’ concerns. In order for the [Smiths] to be awarded legal and physical custody of the children, this [c]ourt must find ... that “both of the parents of the child have abandoned or deserted such child or that both such parents are mentally, morally or otherwise unfit to rear and train the child.” The pattern of facts show[s] neglect of the children’s welfare. Also, the children have been exposed to matters of a sexual and drug nature that are genuine, serious dangers to the children.
 

 [[Image here]]
 

 This [c]ourt finds that the children have been residing with the [Smiths] since November 2005, and that the [Smiths] have provided a wholesome and stable environment. Therefore, given the totality of the evidence and circumstances, legal and physical custody of [Sarah] and [Jane] is hereby awarded unto the [Smiths], same being in the best interests of the children.
 

 There is nothing in the record to indicate that the Mississippi Department of Human Services (DHS) was involved with the removal of the children from [Thompson]’s custody in 2007.
 

 ¶ 4. About a year after the chancellor granted the Smiths custody of the chil
 
 *554
 
 dren, Thompson filed a motion alleging that a material change in circumstances had occurred. Namely, she provided evidence that she had improved her life and that many of the problems noted by the chancellor in 2007 had been corrected. Nonetheless, the chancellor declined to modify the 2007 custody order, finding in pertinent part:
 

 In some instances, a natural[-]parent presumption exists.
 
 [2]
 
 The natural[-]parent presumption presumes that the best interest of the child will be preserved by remaining with the natural parent. The key language regarding the natural[-]parent presumption is that the child should “remain” with the natural parent. In this case, the children are currently not in [Thompson's custody and thus cannot “remain” with the natural parent. The natural[-]parent presumption is inapplicable to this case.
 

 ... In this case, the applicable standard of proof is a material change in circumstances in the custodial home which adversely affects the children, such that it wouldn’t be in the children’s best interests that custody be changed.
 

 [Thompson] testified that she has cleaned up her lifestyle. Evidence presented shows that [Thompson] is no longer using drugs, has removed the “myspace.com” pictures referenced in the May 2007 ^Judgment, has a good job, is making acceptable progress in the Pretrial Intervention Program, regularly attends church, has rededicated her life to Christ and been baptized, and has a nice, clean home and no roommate. However, [Thompson] is pregnant out of wedlock. [Thompson's family, friends, and neighbors testified that they are willing to assist her if she were to receive custody of the children.
 

 [Cynthia] was diagnosed with breast cancer. Since her diagnosis, she has undergone surgery and chemotherapy treatments. [Cynthia]’s cancer is now in remission. There is no indication that her cancer has affected her ability to adequately care for the children. Testimony shows that the children are doing well in school and are happy.
 

 [John] was laid off from his job for approximately six (6) weeks. [John] has been rehired and is earning wages equivalent to those he received prior to his being laid off. Since March 2008, [John] has consumed twelve (12) beers, which does not offend the sensibility of the [c]ourt. The [Smiths]’ grandson recently passed away[,] and both [John] and [Cynthia] are grieving.
 

 [Thompson] must show a negative change in the custodial home, rather than a positive change in the non-custodial home. Although the [c]ourt commends [Thompson] for the positive change[s] in her behavior, no facts exist to suggest a material change in the custodial home which adversely affects the children. In this case, the standard of proof has not been met.
 
 *555
 
 not consented to the 2007 transfer of custody to the Smiths.
 

 
 *554
 
 After discussing the child-support obligations of Thompson and David Smith, the children’s natural father, the chancery court ordered the DHS “to immediately release and remit to [the Smiths] any and all child[-]support monies they are holding in their account....” During the hearing on Thompson’s motion to modify custody, the chancellor noted that Thompson had
 

 
 *555
 
 ¶ 5. There is no dispute as to the facts of this case; that is to say, the Smiths do not contend that Thompson is still unfit to raise her children. The only matter at issue is whether the correct legal standard was applied during the 2008 proceedings.
 

 ¶ 6. Any additional facts will be presented during our analysis and discussion of the issue.
 

 ANALYSIS AND DISCUSSION OF THE ISSUE
 

 ¶ 7. In reviewing the decision of a chancellor, we “will not disturb the [factual] findings of [the] chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.”
 
 Wilburn v. Wilburn,
 
 991 So.2d 1185, 1190 (¶ 10) (Miss.2008) (quoting
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26 (¶ 8) (Miss.2002)). However, when reviewing a question of law, we “[apply] a de novo standard of review.”
 
 Id.
 
 (citing
 
 Russell v. Performance Toyota, Inc.,
 
 826 So.2d 719, 721(¶ 5) (Miss.2002)). The only question before this Court concerns the proper legal standard that should have been applied in ruling on Thompson’s motion to modify custody; therefore, we will conduct a de novo review.
 

 ¶ 8. This Court has been unable to locate a Mississippi case dealing with the particular issue before us. Namely, once a third party has been granted custody over a natural parent due to the natural parent’s unfitness to rear a child, what standard applies if and when the natural parent attempts to regain custody of the child? Thompson urges this Court to find that the natural-parent presumption mentioned by the chancellor applies. By contrast, the Smiths ask us to find that the holding of
 
 Barnett v. Oathout,
 
 883 So.2d 563 (Miss.2004) applies, as the chancellor found.
 

 ¶ 9. In
 
 Barnett,
 
 our supreme court found that when a parent has lost custody of a child due to the DHS’s intervention, the proper legal standard that applies when the parent seeks to regain custody of the child is “first, whether ... there was a substantial change of circumstances which adversely affected the children, where it would be in the children’s best interest[s] that custody be changed; and second, whether [the parent] showed that he had eliminated the behavior that caused the children to be taken in the first place.”
 
 Id.
 
 at 569 (¶ 12). However, the
 
 Barnett
 
 court stated that the holding in that case was limited to the particular facts of a DHS intervention: “The correct legal standard,
 
 applicable in DHS cases,
 
 was used by the chancellor....”
 
 Id.
 
 at 573 (¶29) (emphasis added). In the present case, there is no indication that the DHS was ever involved. However, we conclude that the holding of
 
 Barnett
 
 is applicable in a case such as the one before this Court, even though the DHS was not involved.
 

 ¶ 10. Regardless of the fact that the DHS was not actually involved in the case before this Court, the same showing was made regarding Thompson; that is to say, Thompson was shown to be unfit to rear her children. Her standing is exactly the same as a natural parent whose parenting draws the attention of the DHS. In fact, it may be that the only reason the DHS did not become involved in the present case is because Thompson did not have physical custody of the children at the time of her inappropriate behavior and lifestyle. Therefore, we find that the
 
 Barnett
 
 standard was properly applied in the present case. That is to say, Thompson could only regain custody of her children by showing that there was a material change in circumstances in the Smiths’ home that ad
 
 *556
 
 versely affected the children. Thompson has made no allegation that the chancellor overlooked such a change; rather, her sole contention is that the chancellor should have presumed that custody should be placed with Thompson as a natural parent. As we have discussed, such is not the case.
 

 ¶ 11. Therefore, this contention of error is without merit. The judgment of the chancery court is affirmed.
 

 ¶ 12. THE JUDGMENT OF THE CHANCERY COURT OF COPIAH COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 LEE AND MYERS, P. JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND MAXWELL, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Names have been changed throughout this opinion to protect the identity of the minor children.
 

 [2]
 

 . Mississippi law provides a presumption that a natural parent is favored for custody of a child over any third party.
 
 Lorenz v. Strait,
 
 987 So.2d 427, 434 (¶ 41) (Miss.2008). However, the presumption cannot be used by a natural parent who willingly relinquishes custody of a child.
 
 Grant v. Martin,
 
 757 So.2d 264, 266 (¶ 10) (Miss.2000). The chancellor in the present case noted that Thompson contested the transfer of custody to the Smiths.