# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-00409-COA

AMY CLEMONS PLUMMER                                                    APPELLANT

v.

JAMES JEFFREY PLUMMER                                                   APPELLEE

DATE OF JUDGMENT:              02/03/2016
TRIAL JUDGE:                   HON. MITCHELL M. LUNDY JR.
COURT FROM WHICH APPEALED:     GRENADA COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:       A.E. (RUSTY) HARLOW JR.
                               KATHI CRESTMAN WILSON
ATTORNEY FOR APPELLEE:         LUTHER PUTNAM CRULL JR.
NATURE OF THE CASE:            CIVIL - DOMESTIC RELATIONS
TRIAL COURT DISPOSITION:       TERMINATED ALIMONY AND REDUCED
                               CHILD-SUPPORT OBLIGATION
DISPOSITION:                   AFFIRMED - 07/18/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., ISHEE AND WESTBROOKS, JJ.**

**ISHEE, J., FOR THE COURT:**

¶1.     In 2005, James and Amy Plummer were divorced by decree of the Grenada County

Chancery Court.  Among others things, James was ordered to pay Amy $100 per month in

alimony, and $850 per month in child support.  In September 2014, Amy filed a petition for

citation of contempt and for modification—requesting an increase in child support.  James

submitted an answer and a counterclaim for contempt and modification.  In his counterclaim,

James requested that his child-support obligation be reduced or terminated, and requested

that his obligation to pay alimony be terminated.

¶2.     A trial was held, and the chancery court rendered its written ruling on February 3, 2016.  In its ruling, the chancery court terminated James's alimony obligation, and modified his child-support obligations.  Amy appeals.  Finding no error, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3.     James and Amy were divorced on October 25, 2005.  At the time of the divorce, James worked as a federal park ranger, and Amy worked for the school system. The parties had three minor children: Jeffery, Jamie, and Aubrey.[1]  They shared joint legal custody of Aubrey and Jeffrey, but Amy received sole physical and legal custody of Jamie.  In its ruling in 2005, the chancery court found that Jamie was a child of special needs, and thus awarded child support above the statutory guidelines, as well as limited visitation with James.

¶4.     In the divorce decree, the chancery court ordered the following of James: to pay Amy $850 per month in child support, which exceeded the statutory guidelines; to pay Amy $100 per month in alimony; to provide major medical and hospitalization insurance for the children; to pay one-half of noncovered medical expenses for the children; and to pay $6,292.50 in attorney's fees to Amy.  Additionally, the chancellor awarded Amy the right to claim all three of their children as dependents for state and federal income-tax purposes.

¶5.     Nearly nine years later, in September 2014, Amy filed a petition for citation of contempt and for modification.  In the petition, Amy requested an increase in child support, and requested that James be ordered to provide support for Jamie beyond the age of majority,

---

[1] Jeffrey was born in 1995; Jamie was born in 1998; and Aubrey was born in 2000.

as Jamie has special needs and will require constant care throughout her lifetime.[2] Additionally, Amy requested that James be held in contempt for his willful failure to pay sums as ordered by the chancery court.

¶6.    James filed an answer and a counterclaim for contempt and modification on July 10, 2015.  In the counterclaim, James requested that Jeffrey be emancipated, that physical custody of Jamie and Aubrey be transferred to him, that his child-support obligation be reduced or terminated, and that his obligation to pay alimony be terminated.

¶7.    A trial was held on January 7, 2016, and the chancery court rendered its ruling on February 3, 2016.  In its ruling, among other things, the chancery court found Jeffrey to be emancipated, terminated James's alimony obligation, and modified the amount of James's child-support obligation—from $850 per month for three children to $800 per month for two children.  The chancery court also held that for every month James exercised visitation with the children, the next month he would only have to pay $700.

¶8.    As it related to the termination of James's alimony obligation, the chancery court found that since the time of the parties' divorce, there was a substantial, material change in circumstances, which warranted termination of James's alimony payments.  Specifically, Amy had received a substantial increase in her salary.  At the time of the divorce, Amy worked in the school system—making approximately $33,000 per year.  Then, at some point, Amy's salary increased to approximately $44,000 per year.  And finally, after receiving her

---

[2] Jamie is described as being profoundly disabled.  The record shows that she is, for the most part, bed-bound; requires a nurse's care while Amy is at work; has a tracheotomy that requires ongoing care; needs a wheelchair to leave the house; and requires a diaper, which must be changed every four hours—even through the night.

master's degree, Amy received a raise in August 2015—making roughly $51,000 per year. In its ruling, the chancery court noted that Amy has had continuous employment and now makes $4,290 gross monthly income; the chancery court found that this amount was sufficient for Amy to pay a $785 mortgage on a house, finance a new car for herself, buy a new jacuzzi, and buy a vehicle for Jeffrey.

¶9. As a federal park ranger for more than twenty-five years, James had maxed out his earnings. James's maximum base pay was $51,437 annually. James's Uniform Chancery Court Rule 8.05 financial statement showed that his gross income was $54,415. The difference between the pay-scale base and James's actual gross income was due to the additional income he earned while working nights and weekends. Additional income could have been earned from deployment to natural-disaster areas; this income was not guaranteed. For the 2014 tax year, James's gross income—according to his tax return—was $65,765. In 2014, James was deployed for two-and-one-half months for work on natural disasters. And in 2015, James worked overtime, nights, and weekends to earn income exceeding his base pay.

¶10. The chancery court then recalculated James's child-support obligation. In determining James's monthly adjusted gross income (AGI), the chancellor did not consider only James's base pay, nor did he consider only James's highest years of earning—from disaster-relief work; instead, the chancellor averaged the high and base AGI to reach a monthly AGI of $4,160.12. Ultimately, the chancellor arrived at $700 in child support. Additionally, in accordance with the statutory deviation factors, the chancellor increased this amount by $100

4

($800 in total) because one of James's children has special needs and has no visitation with him. Yet the chancellor qualified this award by finding that for every month James exercises visitation with the children, his next month's payment would only be $700.

¶11. After the chancery court issued its ruling and subsequent order, Amy filed a motion to reconsider on February 25, 2016. The chancery court denied her motion on March 17, 2016. Amy now appeals.

## STANDARD OF REVIEW

¶12. The Mississippi Supreme Court has held that an appellate court "will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion, was manifestly wrong [or] clearly erroneous[,] or [applied] an erroneous legal standard." *Wilburn v. Wilburn*, 991 So. 2d 1185, 1190 (¶10) (Miss. 2008). Regarding legal questions, this Court applies a de novo standard of review. *Id*.

## DISCUSSION

### I.     Termination of Alimony Obligation

¶13. On appeal, Amy argues that the chancellor erred in terminating James's alimony obligation. Specifically, Amy argues that there was not a material change in circumstances that justified the termination of alimony.

¶14. "In order to justify the modification of a divorce decree, there must be a material and substantial change in the circumstances of the parties arising subsequently to the entry of the decree." *Magee v. Magee*, 754 So. 2d 1275, 1279 (¶7) (Miss. Ct. App. 1999). Our supreme court has held that in the event of a material change of circumstances periodic alimony may

5

be terminated upon an order of the court. *Hubbard v. Hubbard*, 656 So. 2d 124, 129 (Miss. 1995).

¶15.   In this case, the chancellor found that there had been a material change in circumstances since the court's original alimony award of $100 per month to Amy.  We agree.  In making his determination, the chancellor noted that—since the original award—Amy made a $4,290 gross monthly income, which was sufficient to pay a $785 mortgage on a house, finance a new vehicle for herself, purchase a jacuzzi, and purchase a vehicle for her son.

¶16.   After reviewing the record, we agree with the chancellor's finding of a material change in circumstances.   Indeed, the record shows that—since the time of the divorce—Amy's financial situation had substantially improved.  At the time of the divorce, Amy made approximately $33,000 annually.  At some point, Amy received a raise to around $44,000 annually.  And then finally, in August 2015, after completing her master's degree, Amy saw her salary rise to approximately $51,000 annually.  This is an increase of roughly $18,000 since the time of the divorce.

¶17.   Alternatively, Amy argues that even if there was a material change of circumstances, the evidence proves that termination was not warranted when considering the twelve factors set forth under *Armstrong v. Armstrong*, 618 So. 2d 1278, 1280 (Miss. 1993).  Indeed, this Court has held:

> Not only must the chancellor consider the *Armstrong* factors in initially determining whether to award alimony and the amount of the award, but the chancellor should also consider the *Armstrong* factors in deciding whether to modify periodic alimony, comparing the relative positions of the parties at the

6

time of the request for modification in relation to their positions at the time of the divorce decree.

*James v. James*, 724 So. 2d 1098, 1102 (¶14) (Miss. Ct. App. 1998). The record reflects that the chancellor did consider these factors, even if he did not label them as such. The chancellor also considered the relative financial positions of James and Amy—both at the time of the request for modification, and at the time of the original divorce decree. And so, we find that the chancellor did not err in terminating Amy's original award of $100 per month in alimony.

¶18. In conclusion, and after a careful review of the record, we do not find that the chancellor abused his discretion in finding a material change in circumstances warranting the termination of James's alimony obligation. This issue is without merit.

## II. Reduction of Child-Support Payments

¶19. Next, Amy asserts that the chancellor erred in reducing James's child-support payments. Amy's argument, under this issue, is twofold. First, Amy argues that the chancellor erred in calculating the child-support amount. Second, she argues that the chancellor erred in reducing the child-support amount—conditioned on James's exercising certain visitation rights with his children.

¶20. This Court has held that "[a] chancellor is afforded broad discretion in the area of modification of child[-]support obligations, and [we] will reverse only when the chancellor was manifestly in error in a finding of fact[,] or if there has been an abuse of discretion[,] or when an erroneous legal standard was applied." *Leiden v. Leiden*, 902 So. 2d 582, 585 (¶10) (Miss. Ct. App. 2004) (citing *McEwen v. McEwen*, 631 So. 2d 821, 823 (Miss. 1994)).

¶21. In order to modify child support, there must be a showing of a material change in circumstances of the child or parents since the decree awarding support. *McNair v. Clark*, 961 So. 2d 73, 79 (¶23) (Miss. Ct. App. 2007). Our supreme court has held that "in determining if a material change in circumstances has occurred which would warrant a modification of child support, the change in circumstances could be that of the father, the mother, or the children." *Shipley v. Ferguson*, 638 So. 2d 1295, 1298 (Miss. 1994).

### A. Calculation of Child-Support Payments

¶22. Amy argues that the chancellor erred in calculating the modified child-support amount. The Mississippi statutory child-support guidelines provide that noncustodial parents should pay twenty percent of their AGI for two children. Miss. Code Ann. § 43-19-101(1) (Rev. 2015). The guidelines are presumptively correct for persons with an adjusted yearly gross income between $10,000 and $100,000. *Id.*

¶23. In determining James's monthly AGI, the chancellor did not consider only James's base pay, nor did he consider only James's highest years of earning; instead, the chancellor averaged the high and base AGI to reach a monthly AGI of $4,160.12. Ultimately, the chancellor arrived at $700 in child support. Additionally, in accordance with the statutory deviation factors, the chancellor increased this amount by $100 ($800 in total), because one of James's children has special needs and no visitation with him. The chancellor further ruled that if James exercised his visitation rights for one full weekend, his child-support obligation would be reduced by $100. Meaning the following month, James would only have to pay $700 in child support.

¶24. Amy argues that the chancellor should have considered only the high years of James's income to determine the appropriate AGI. Yet the chancellor declined to use this figure, and instead averaged the high and base AGI to come up with the monthly AGI to calculate James's modified child-support payment. Upon review of the record, we cannot say that the chancellor erred in calculating James's new child-support obligation. This issue is without merit.

### B. Reduction of Child Support

¶25. Next, Amy argues that the chancellor erred in reducing James's child-support obligation in the event that he exercised one full weekend of visitation with the children.

¶26. A court may deviate from the presumptively correct amount based on certain statutory factors. Miss. Code Ann. § 43-19-103 (Rev. 2015). Such deviation must be supported by written findings of fact explaining why the presumptively correct amount is inappropriate. *Id*. The statutory factors include:

(a) Extraordinary medical, psychological, educational or dental expenses.

(b) Independent income of the child.

(c) The payment of both child support and spousal support to the obligee.

(d) Seasonal variations in one or both parents' incomes or expenses.

(e) The age of the child, taking into account the greater needs of older children.

(f) Special needs that have traditionally been met within the family budget even though the fulfilling of those needs will cause the support to exceed the proposed guidelines.

(g) The particular shared parental arrangement, such as where the noncustodial parent spends a great deal of time with the children thereby reducing the

9

financial expenditures incurred by the custodial parent, or the refusal of the noncustodial parent to become involved in the activities of the child, or giving due consideration to the custodial parent's homemaking services.

(h) Total available assets of the obligee, obligor and the child.

(i) Payment by the obligee of child care expenses in order that the obligee may seek or retain employment, or because of the disability of the obligee.

(j) Any other adjustment which is needed to achieve an equitable result which may include, but not be limited to, a reasonable and necessary existing expense or debt.

*Id*. A noncustodial parent who exercises little to no visitation may be ordered to pay support exceeding the statutory guidelines. *Gray v. Gray*, 909 So. 2d 108, 114 (¶30) (Miss. Ct. App. 2005).

¶27.    In this case, the chancellor found that a deviation from the statutory child-support guidelines was appropriate based on Jamie's special needs and James's lack of visitation with his children. Indeed, the record shows that the chancellor addressed James's lack of visitation with his children when he considered and then increased the amount of the child-support obligation. The chancellor, however, ruled that for every month that James exercised one full weekend of visitation, the next month's child-support obligation would not be $800, but $700. After reviewing the record, we find that the chancellor did not err in reducing James's child-support obligation—contingent on his visitation with his children. The chancellor was operating under the discretion afforded to him under the statute. *See* Miss. Code Ann. § 43-19-103. This issue is without merit.

## CONCLUSION

¶28.    After reviewing the record, we find no abuse of discretion on the part of the

10

chancellor.  Therefore, we affirm.

¶29.  **AFFIRMED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.**